FRANCIS E. McDONALD *vs.* BENJAMIN F. DUTTON & others.

Middlesex. November 16, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence. Elevator.*

The proprietor of a freight elevator which passes between a sub-basement and the sidewalk of a street through an elevator well with a stone coping at the top and its sides below the coping covered with plaster which is scratched and banged in the operation of the elevator is not negligent toward his employees who make use of the elevator in failing to repair a hole in the plaster just below the coping five or six inches wide, two and a half inches high and from an inch to an inch and a half deep, in which the toes of an employee are caught under the coping as the elevator is ascending.

An employee making use in the course of his employment of a freight elevator maintained by his employer assumes the risk of an injury occasioned by the walls of the elevator well being covered with plaster instead of a harder material.

TORT for personal injuries sustained in the manner described in the opinion while on a freight elevator maintained by the plaintiff's employers in their building on Pemberton Square in Boston. Writ dated November 4, 1902.

At the trial in the Superior Court before *Gaskill*, J. the judge refused to rule that on all the evidence the plaintiff could not recover, and also refused to make other rulings requested by the defendant which the decision of the court has made immaterial. The jury returned a verdict for the plaintiff in the sum of $2,500 ; and the defendants alleged exceptions.

*R. Spring*, (*F. B. Kendall* with him,) for the defendants.
*W. I. Badger*, (*W. H. Hitchcock* with him,) for the plaintiff.

LORING, J. This is an action of tort for personal injuries to

an employee while he was riding on his employers' freight elevator.

The plaintiff was a boy between fifteen and sixteen years of age, and we assume that the jury were warranted in finding that he had a right to be on the elevator and that he was in the exercise of due care at the time of the accident. We do not find it necessary to consider this with care, because in our opinion he failed to make out a case of negligence on the part of the defendants.

The elevator in question ran from the sub-basement of the defendants' store to the sidewalk in Pemberton Square. It consisted of a platform seven feet ten inches square, with an iron post at each corner about six and a half feet high. The top of the elevator well had an iron covering which was raised by these posts as the elevator ascended above the level of the sidewalk, and this covering returned automatically when the elevator descended. The top edge of the elevator well was made of a stone coping seven inches deep, and the sides of the well below the coping, for a distance down the well of ten or fifteen feet, were plastered on metal lathing.

The plaintiff's case was that he had gone to the sub-basement with a basket full of waste paper, and after depositing it there he was returning on the elevator, sitting on his basket with one foot inadvertently over the edge of the elevator, when it was caught in a hole in the plaster just under the stone coping. "The evidence tended to show that the plaintiff was injured by losing the two outside toes of his right foot and a portion of the outside of said foot. No other toes were injured."

No witness had seen this hole before the injury. One Williams examined it for the plaintiff twenty-three days after the accident. His description of it was as follows: "There is a cap of granite that lies level with the sidewalk, about six or eight inches thick, and underneath that capping about the middle of the front of the elevator was a hole which was directly under the cap where the plastering or side of the elevator well had fallen off and leaving a place under the cap and running back; I measured with my finger on the left hand side, it would be about an inch and a half deep and on the right hand side it would be about an inch deep — it was an uneven break. The

break was five or six inches wide." Two witnesses called by the defendants, who were on the sidewalk when the accident happened and looked to see what was the cause of it, also described this hole. One said : " The only thing I saw was a little hole there under the coving there, or that plate that comes down there, and I should judge it was about as big as your fist." The other: " Say this was the coving, here, your stone coving, and there was a little break, not very large, right underneath, I should say a couple of inches, — I don't know, but somewhere about that ; just a little dent of a hole in.

" Q. How deep was it ? A. I didn't take particular measurement, but I would take it — just looking at it there — about half an inch, or so ; about half an inch, I should say."

The evidence justified a finding that the hole was an old one.

The clearance between the elevator and the sides of the elevator well was about an inch, but there was some vibration in the working of the elevator, especially in case of heavy loads. The plaintiff's witness Williams testified that the " well was rough and there were other breaks in the plastering besides this one ; that the sides of the well were scraped, with lines running up on all sides ; that there were scratches varying from one fourth to one half inch in depth ; that excepting for these holes and scratches the surface of the elevator well was smooth."

The plaintiff relies also on the following testimony given on cross-examination by one Shea, a machinist in charge of the defendants' elevators but not of their elevator wells ; namely, that the walls of the well ought to be flush to avoid danger as much as possible, the danger of bundles getting caught which might tear the wrapping, or rip machinery, and if that happened, somebody would probably get hurt.

The plaintiff also relies on the testimony of this witness " that a hole in the side of the elevator eighteen inches long and projecting in under that cap from an inch to an inch and a half, and projecting down four to six inches, would be such a place as he would feel it his duty to report."

We lay aside the last answer of this witness. The witness testified that he did not find a break of that kind, and we find in the bill of exceptions no statement that the break in question was a break of that kind.

We are of opinion that it would be holding an employer to too high a degree of care if he was held to be negligent in not repairing a break in the plastering of a freight elevator well which is necessarily scratched and banged in the use to which it is put, when that hole at most is five or six inches wide, two inches and a half high, and an inch deep at one side and an inch and a half deep at the other side. We have taken the height of the hole at two and one half inches because one of the defendants' witnesses said it was " as big as your fist." No height was given by the witnesses called by the plaintiff. We are of opinion that it was not a defect. See in this connection *Jennings* v. *Tompkins*, 180 Mass. 302.

So far as there was a danger incident to the walls of the elevator well being covered with plaster in place of boards or metal, that was a danger assumed by the plaintiff as an obvious risk of the employment which he chose to accept.

*Exceptions sustained.*