### JAMES BLAKE *vs.* JOHN F. JOHNSTON COMPANY.

Bristol.    October 28, 1912. — November 26, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DeCOURCY, JJ.

*Negligence,* Employer's liability.

At the trial of an action by an employee against his employer for personal injuries received in the course of his employment, it appeared that the defendant was installing a steam heating apparatus in a new mill, that just before the accident the plaintiff was assisting in the hanging of a line of pipe to a ceiling and in doing so was standing upon a wooden horse four feet high, that in getting down from the horse his shoe caught upon a projecting nail and he was thrown to the floor. He had received no warning of any likelihood of the presence of a nail. The horse was not the property of the defendant but was found on the premises when the defendant's work began and was used by the carpenters and other workmen. There was no evidence to explain the presence of the nail or tending to show that others using the horse would be likely to drive nails into it, or that any one saw the nail before the accident, and the appearance of the nail was not indicative of age. *Held,* that there was no evidence which would warrant a finding of negligence on the part of the defendant.

TORT for personal injuries received by the plaintiff while in the employ of the defendant as stated in the opinion. Writ dated July 25, 1910.

In the Superior Court the case was tried before *King,* J. Material facts which the evidence tended to prove are stated in the opinion. At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*C. R. Cummings,* (*J. Little* with him,) for the plaintiff.

*D. F. Slade,* for the defendant.

DeCOURCY, J. The defendant had contracted to furnish the steam heating apparatus for a new mill that was being constructed, and at the time of the accident was engaged in hanging a line of steam pipe to the ceiling of the first story. The plaintiff was one of its employees and a short time before the accident had been sent to lower one of the hangers or hooks upon which the pipe rested. While doing this work he stood upon a wooden bench commonly known as a horse, which was about four feet high and five and a half feet long; and, according to his testi-

mony, when getting down his shoe caught in a nail on the end of the horse and he was thrown forward to the floor and injured.

It is not contended by the plaintiff that the horse was in any way unsuitable or defective except as the presence of this nail may have made it so. Apparently the nail had been partly driven into the board that formed the top of the horse, leaving an inch or less out, and this exposed part had been bent so that it projected about a quarter of an inch above the top and protruded about three eighths of an inch beyond the edge of the board. It did not appear that it served any purpose in the construction or use of the horse, and no evidence was offered to explain why or by whom it was driven there.

As a practical matter it would be going far to say that a building contractor owes a legal duty to his workmen to see to it that no protruding nail is left in a staging bench or horse that is being used in the varied and rough work of building construction. See *Jennings* v. *Tompkins*, 180 Mass. 302; *McDonald* v. *Dutton*, 190 Mass. 391. But however that may be, in the case at bar a jury would not be warranted by the evidence in finding that the defendant or its acting superintendent was negligent in allowing the workman to use this horse, notwithstanding the presence of the nail and the absence of warning to the plaintiff. It was not the defendant's property, but was found on the premises when its work began, and was used by the carpenters and other workmen. Hence there is no basis for an inference that one of the defendant's employees must have driven the nail. Nor is there anything in the case to suggest that others in using the horse would be likely to drive nails into it, and that, in anticipation of such conduct, the defendant should have inspected it. It appears affirmatively that the defendant did not in fact know that the nail was there, and the alleged superintendent, Mills, who after the accident saw the "stub of a nail," was unable to see it unless his attention was directed to it. Further, although for some months the horse had been used about the building by employees of the different contractors, no witness was called who ever saw the nail before the accident. Its appearance was not indicative of age; and there is nothing but conjecture upon which to base an inference that the nail had been there long enough for the defendant's agents, in the exercise of due care, to have had knowledge of it.

In view of our conclusion that the evidence would not warrant a finding of negligence on the part of the defendant, it becomes unnecessary to consider the question of the plaintiff's due care.

*Exceptions overruled.*