Sarah S. Wills *vs.* Ransom F. Taylor & another.

Worcester.   October 1, 1906. — October 17, 1906.

Present: Knowlton, C. J., Hammond, Braley, & Rugg, JJ.

*Nuisance.   Negligence.*

In an action against the owner of a building for personal injuries from falling down an elevator well, there was evidence that the plaintiff was a boarding house keeper and was looking for another house in which to carry on her business, that she saw an advertisement of the defendant's building and going to the defendant's office found there an agent of the defendant who gave her the keys of the building and told her to go and see it, that on going to the building she found the outside door open and entered a dark and narrow entry at the end of which she could see a door with ground glass panels in it but could see nothing else, that she supposed it to be the door of the kitchen or dining room and thought she would like to see the room, that she walked forward putting out her hand in front of her on account of the darkness and walked into an elevator well of which the doors were wide open, the elevator car being at the floor above.   The door with the ground glass panels was at the back of the elevator well.   It had been the door of a doctor's office before the elevator was put in but thereafter had been disused and was closed by a bar.   *Held,* that the evidence justified a finding that, in view of the darkness of the entry, the existence of the elevator well and the appearance of the door with glass panels at the back of the well, the defendant was negligent in failing to warn the plaintiff of her danger; that the plaintiff, being upon the premises by invitation of the defendant for the purpose of examining them, was justified, in the absence of any information to the contrary, in thinking that the door led to some part of the building to be let and in trying to reach it as she did; and that the case properly was submitted to the jury.

Tort for personal injuries from falling into an elevator well in a building on Pleasant Street in Worcester owned at the time by the defendants.   Writ dated December 24, 1903.

In the Superior Court the case was tried before *Pierce,* J. The jury took a view of the place of the accident, and a plan was in evidence, a blue print of which was annexed to the bill of exceptions.

The plaintiff testified that she was fifty-nine years old; that at the time of the accident she lived at 74 Lincoln Street and was keeping a boarding house; that she had about fifty-two boarders; that the accident happened on September 29, 1903; that she was looking for another house, one with steam heat;

that on the morning of September 29, she saw in the Worcester Daily Telegram of that day the following advertisement: " Apartment block to rent consisting of thirty fine, large, airy rooms, modern, steam heated, passenger and freight elevator from the ground floor. Possession given October 1st. Apply to R. F. Taylor, 438 Main Street " ; that thereupon she went to Taylor's office at about nine o'clock on the morning of September 29, and found there a man, whose name she afterwards learned was Butler; that she asked him where this house to let was and he said it was on Pleasant Street, next to Lothrop's Opera House ; that he gave her the keys and told her to go and see it ; and that when she was going out of the door, he said, " You'll bring the keys back, won't you ? " and she said, " I certainly will " ; and that no one else was in the office.

The plaintiff's description of the manner in which the accident occurred is quoted in the opinion, where also are stated the other material facts which could have been found upon the evidence.

At the close of the evidence, the defendants asked the judge to rule that, upon the whole evidence, the plaintiff could not recover. The judge refused so to rule and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $2,000. The jury also made the special findings which are stated in the first sentence of the opinion. The defendants alleged exceptions.

*G. S. Taft*, (*C. W. Hobbs, Jr.* with him,) for the defendants.

*C. S. Dodge*, (*W. A. Gile* with him,) for the plaintiff.

HAMMOND, J. The jury specially found that the doors of the elevator well were open at the time the plaintiff went to the building, and that she never had been there before. The evidence warranted those findings. The defendants were the owners of the building, and it was in their charge and possession. While it is true that some repairs had been going on, yet on cross-examination one of the defendants testified that on September 29, the day of the accident, the work was substantially done. He testified : " The plumbers had been out of there three weeks. There were no carpenters there and no paperers there. There was one painter there. I understand that he was gilding the picture mouldings. There were two men on the outside of the building. No one else was in the building except one tenant

(Miss Burns) and we did not depend upon her to see that the elevator was taken care of or the elevator doors closed. She didn't use the elevator but her friends might have used it." In a word, the premises were under the charge of the defendants the owners, and upon them rested the duty of using reasonable care to see that they were safe.

By their invitation the plaintiff went to the house for the purpose of examining it as a prospective tenant. The hallway was narrow. At the rear end of it as originally built there was a door containing ground glass panels, which opened into a doctor's office. Subsequently an elevator was put in by the defendants' predecessor at the rear end of the hallway, with doors opening into the hallway. The door to the doctor's office was left unchanged except that a bar was put across it so that it could not be used. The elevator occupied substantially the whole width of the hall. When the doors of the elevator well were open and the car was as high as the second floor, this ground glass door was plainly visible "on account of the light the other side of it," as one witness testified. The hallway was quite dark, one witness testifying that she "should say it was not light enough in the hall to see anything except the door with the ground glass" which was in the rear.

As to the manner in which the accident occurred, the plaintiff testified as follows: "I went to the block, and found the outside door wide open. I went in and went along the side of the stairs [on one side of the hallway] and saw a door with two panes of frosted glass, and I thought it was the kitchen or dining room. It was so dark I could see only that door. . . . As I did my own cooking, I thought I would like to see the kitchen and, as I was going along, I put my hand out in front of me, as I once ran against a door in the dark. I didn't run it along the side of the house. I could see nothing but that door with frosted glass in it at the end of the hall, and I went along and found myself falling. I opened no door, and saw no door but the one I supposed was the door going into the dining room, that is, the door with the ground glass in it. I saw nothing except that. I did not know there was any well there. I supposed I was going to the dining room, and I remember myself falling, but don't remember hitting the bottom or anything at all."

She was found shortly afterwards at the bottom of the well, nearly, if not quite, unconscious. At the time she was found the doors of the elevator well on the hall floor were open and the car was above at the second floor.

Upon the evidence the jury might well have found that in view of the darkness of the entry, the existence of the elevator well, the appearance of the glass door, and their relative situation, there rested a duty upon the defendants to caution the plaintiff, and that in failing to give such caution the defendants were negligent. And the jury might further find that the plaintiff, being by the invitation of the defendants upon the premises for the purpose of examining them, was justified, in the absence of any information or caution to the contrary, in thinking that the door led to some part of the tenement and in trying to reach it as she did.

*Exceptions overruled.*