CHARLES M. HAMILTON *vs.* HORACE B. TAYLOR.

Suffolk. December 11, 1906. — March 11, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence. Elevator.*

If an iceman, who knows that the way to deliver ice in the kitchen of a certain restaurant is to go through a covered passageway and then through an opening in the wall of the building and across a freight elevator to the door of the kitchen on the other side of it, is holding in front of him a basket of ice weighing about sixty-five pounds, the top of the ice coming a few inches below his

chin and this being the only way to carry the basket, and the place being rather dark and there being nothing to indicate that the elevator is up, for the purpose of delivering the ice in the kitchen walks through the passageway and into the elevator well and is injured, in an action against the owner of the building in control of the elevator for his injuries it is a question for the jury whether he was in the exercise of due care.

In an action by an iceman against the owner of a building in control of a freight elevator therein, for personal injuries from falling into the well of the elevator when carrying a basket of ice for the purpose of delivering it in the kitchen of a restaurant kept by a tenant of the defendant, there was evidence that in order to reach the door of the kitchen, where the refrigerator was, it was necessary to cross the platform of the elevator which was used as "a back entrance for everything" and the arrangement of the premises indicated that the use of a covered passageway from the highway which led over the elevator platform was necessary to the convenient use of the restaurant, that the tenant of the defendant who kept the restaurant had a right to use the passageway and that his foreman had a key to the gates leading from the passageway to the sidewalk of the highway. *Held,* that from the evidence it might be inferred that the plaintiff when injured was using the passageway under an implied invitation from the defendant.

In an action by an iceman against the owner of a building in control of a freight elevator therein, for personal injuries from falling into the well of the elevator when coming from a covered passageway at the end of which was the elevator, when not in use, which it was necessary to pass over in order to reach the door of the kitchen where the plaintiff was to deliver a basket load of ice which he was carrying, if there is evidence that the plaintiff, supposing that the platform of the elevator was there, walked into the elevator well and was injured, that the elevator had been moved up, and the gates, which should have fallen into place automatically and served as a barrier to the elevator well, were not in place, that these gates were out of repair, that they often had been out of repair before, and that they frequently failed to work, there is evidence for the jury of negligence on the part of the defendant.

TORT for personal injuries from falling into an elevator well in a building owned by the defendant numbered 52 and 54 on Pearl Street in Boston between nine and ten o'clock in the forenoon of January 8, 1900. Writ dated May 28, 1900.

At the trial in the Superior Court *Bond,* J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*G. H. Mellen,* for the plaintiff, submitted a brief.

*C. E. Hellier,* for the defendant.

KNOWLTON, C. J. The plaintiff was route foreman for an ice company, and was assisting one of the drivers of the ice wagons in delivering ice. At 52 Pearl Street on the corner of Wendell Street one Saunders kept a restaurant on the ground floor of the building. His premises were divided by a partition about fifteen feet from the rear, so as to leave a main room in

front, with tables for guests, and a kitchen in the rear. The main entrance was in front, from Pearl Street, and from Wendell Street a covered passageway led into the building through a thick brick wall to a freight elevator which was used by the tenants of the building. Across the elevator was a door leading into the kitchen of the restaurant. Lewis, the driver of the ice wagon, had delivered ice through the passageway, across the elevator, into the refrigerator in the kitchen of the restaurant, nearly every day for two months before the accident. On the day of the accident the plaintiff, who had made a delivery there the day before, was carrying a basket of pitcher ice with a square chunk of ice on the top of it, the whole weighing about sixty-five pounds, into the restaurant. The only way to carry the basket was to take hold of the two handles and carry it in front of him. The top of the ice came a few inches below his chin. There was evidence that the place was rather dark, and that, supposing that the platform of the elevator was there, he walked into the elevator well and was injured. The elevator had been moved up, and the gates, which should have fallen into place automatically and protected the elevator well, were not in place, and there was nothing to obstruct his passage or to show that the way was not safe, unless one, by looking intently, might discover that there was an opening in the floor.

It was proved and not disputed that the defendant, the owner of the building, retained control of the elevator, and was responsible for its condition to those who were entitled to use it or pass over it.

It is a question not free from difficulty whether there was evidence that the plaintiff was in the exercise of due care. He testified that, " They always drove around to the rear on Wendell Street and went in through a passageway." Upon the evidence he well might believe, and presumably did believe, that this was a safe way to deliver ice, unless there was something to indicate that the elevator was up. Naturally he would expect that there would be gates or other barriers to keep people from walking into the elevator well if the platform of the elevator was removed. In view of the darkness of the place, and the facts that the basket of ice was before him, at a height which would cut off much of his view of the floor, and that he

had a right to suppose that this was a safe passageway into the kitchen when there was nothing to indicate danger, we are of opinion that it was a question for the jury whether he was in the exercise of due care. *Wright* v. *Perry,* 188 Mass. 268. *Wills* v. *Taylor,* 193 Mass. 113.

The next question is whether there was evidence that he was there by the defendant's invitation. There was much evidence that he was there in the tenant's right. The regular driver of the ice wagon testified, " That was the way we were supposed to take it in. They objected to us taking it in the front way. Going in the front way would take you through the customers' room, the restaurant, and going in this way from the alleyway would take you directly in to where the refrigerator was in the kitchen." There was also much evidence that the tenant Saunders had a right to use the passageway over the elevator platform. His foreman had a key to the gates leading from the passageway to the sidewalk. Saunders testified, " that they always took the garbage out and brought their vegetables in through the passageway, and also the ice; that all heavy supplies came in through that entrance from Wendell Street across this elevator." He also testified that he tended the fire which heated the building, and used the rear entrance and the elevator for taking out the ashes. One Nickerson, a witness called by the defendant, testified, of the occupants of the restaurant, in reference to the elevator, " I know they use it and always have used it. . . . I mean they use the elevator for a back entrance for everything." The arrangement of the premises indicates that the use of the passageway was necessary to the convenient use of the restaurant.

The lease of the restaurant was not introduced, but we infer from the evidence that the right to use the passageway passed to Saunders, either as a part of the premises let, or as an appurtenance. There was ample evidence from which it might be inferred that the plaintiff was there under an implied invitation from the defendant. The jury were not bound to believe the testimony of the defendant.*

---

* The defendant testified that he gave Saunders a written lease but that his copy of the lease had been destroyed in a fire on his premises a year or two before; that there was nothing in the lease about the tenant having a

There was also evidence that the defendant was negligent in suffering the gates of the elevator to be out of repair. They were intended to protect the floor automatically. There was testimony that they often had been out of repair before, and that they frequently failed to work.

*Exceptions sustained.*

right to enter the restaurant by the passageway from Wendell Street over the elevator, and that he never orally gave the tenant any right to use that right of way.