WILLIAM J. TAYLOR, administrator, *vs.* AUGUSTUS A.
HENNESSEY & another.

Essex.    November 4, 1908. — November 25, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.   *Elevator.*

If a boy about fifteen years of age, who is employed in a shoe factory and whose
duty it is to carry racks of shoes to and from a workman on the third floor of
the factory and to use the elevator of the building for that purpose, goes by the
elevator to the third floor and, after speaking a word or two with a workman,
is seen walking backward toward the elevator well drawing a rack of shoes
after him, and, the elevator having risen in the meantime to the next story and
the gate being up, he falls down the well and is killed, his administrator cannot
recover damages for his death from the boy's employer under R. L. c. 106, as
there is nothing to show that he was in the exercise of due care. Upon this
issue it does not help the administrator to show that the gate of the elevator well
had been repaired by nailing on an extra piece of wood, which made it heavier
and caused it sometimes to stay up and sometimes to fall down of its own
weight, if the gate was not connected automatically with the elevator and its
position did not indicate where the elevator should be, and the boy knew this.

TORT under R. L. c. 106, by the administrator of the estate of
Stephen F. Taylor to recover damages for his conscious suffering
and death caused by his falling down an elevator well in the
defendants' shoe factory at Lynn from the third story to the
basement on December 20, 1904.   Writ dated March 18, 1905.

At the trial in the Superior Court before *Sanderson,* J., it was
agreed that the opening of the counsel for the plaintiff might be
taken to be a correct statement of what the evidence for the plain-
tiff would show, and, by agreement, a motion by the defendants
that the jury be directed to return a verdict for the defendants on
the opening statement was argued, and the judge at the close of
the arguments ruled that there was not sufficient evidence of due
care on the part of the plaintiff's intestate, and ordered the jury
to return a verdict for the defendants.   The plaintiff alleged
exceptions.

The case was submitted on briefs.

*J. W. Sullivan,* for the plaintiff.

*N. Matthews, W. G. Thompson & R. Spring,* for the defendants.

HAMMOND, J.   So far as material to the question of the due care of the deceased, the case stated by the counsel for the plaintiff in his opening was substantially as follows:

The deceased was a boy fourteen years and eleven months old at the time of the accident.   He had been at work upon the premises a week, for one Demaris, who was working by the job at re-lasting shoes for the defendants, who owned and controlled the factory.   He had worked previously for some weeks in another factory of the defendants.   His duty was to carry racks of shoes to and from Demaris, who worked on the third floor, and for this purpose he used the elevator.   About five o'clock in the afternoon of the day of the accident he went upstairs upon the elevator, as he had done many times during the week, in the performance of his duty.   Upon arriving at the desired floor, he got out of the elevator on the floor, and spoke a word or two with one La Chappelle, who was working on that floor twelve or fifteen feet from the elevator well.   The last that La Chappelle saw of the boy he (the boy) had hold of a rack of shoes and was walking backward toward the well, drawing the rack after him.   He had got within two feet of the well when La Chappelle turned back to his work, but immediately heard a loud noise and a cry.   The boy had fallen into the well, and was fatally injured.

So far as material the elevator and gate were described as follows: "The gate . . . as originally installed was a balance gate.   That is, it was a gate which when thrown up it ran in a groove."   It consisted of two bars with cross pieces.   As originally constructed the gate, when thrown up, would be held up by a weight connected with it as a balance, like a window weight, but some time before the accident the top bar had been broken and an extra piece had been nailed on, making the gate heavier, so that when thrown up it sometimes stayed up and sometimes fell down of its own weight.   The elevator and gate had been in this condition for several months.   The plaintiff's evidence did not show whether immediately after the accident the gate was up or down.   Except as above stated, "There was nothing on the elevator to tell when it was taken away from that floor, there was no method of locking the elevator at that floor, no bell or anything which would warn one who might expect it to be there that it had gone."   Shortly after the boy fell the platform of the

elevator was found at the floor above.   There was light enough for the boy to see.

The evidence would seem to show that the boy who had brought the elevator to the floor stepped out for a few seconds, and then, on his return with the rack of shoes, backed into the well without looking to see whether the elevator was still there, or else he turned around, raised the gate, and then stepped into the well.

It is to be noticed that the gate was not connected automatically with the elevator.   The position of the gate did not indicate where the elevator should be and the boy knew it.   The case therefore is clearly distinguishable from cases like *Wright* v. *Perry*, 188 Mass. 268, and *Hamilton* v. *Taylor*, 195 Mass. 68, upon which the plaintiff relies.   In each of those cases the gate was automatically connected with the elevator and at the time of the accident it indicated by its position that the platform of the elevator was there.

In the case before us there was no such misleading signal. Upon the opening statement it must be held that the deceased was not in the exercise of due care ; and hence a verdict for the defendants was rightly ordered.

*Exceptions overruled.*