WALTER A. TAYLOR & another *vs.* PIERCE BROTHERS, Limited.

Bristol.   October 28, 29, 1912. — January 7, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DE COURCY, JJ.

*Negligence,* Employer's liability. *Evidence,* Presumptions and burden of proof.

In an action against the proprietor of a cotton mill for causing the instant death of a back boy in its employ, whose duty it was to bring roving for the mules from the card room on the floor below, going there by a stairway, it appeared

that in some unexplained manner the boy was struck and killed by the counter-weight of an elevator that in ascending passed through trap doors in the different floors. No one had seen the boy from the time he started in the direction of the elevator until his lifeless body was found with the head partially in a hole in the mule room floor made for the passage of the counterweight and with the counterweight resting upon the side of the face. The plaintiff contended that it could have been found that, when the boy was looking through the hole in the floor to ascertain whether there was any roving in the card room before going for it, the elevator was set in motion and ascended, opening the trap doors, by one of which the boy was caught and held while the counterweight came down and killed him. *Held,* that, the conduct of the boy before and during the opening of the trap doors being a matter of pure conjecture, there was no evidence that he was in the exercise of due care at the time of the accident and consequently that the action could not be maintained.

TORT under St. 1909, c. 514, § 129, by the father and mother of Robert A. Taylor, as his next of kin who were dependent upon his wages for support, for causing his instant death on August 16, 1910, when he was employed as a back boy in the cotton mill of the defendant at New Bedford. Writ dated November 19, 1910.

In the Superior Court the case was tried before *Lawton,* J. The contention of the plaintiffs in regard to the happening of the accident and the character of the evidence are described in the opinion. At the close of the evidence the defendant asked for certain rulings, of which the first was that upon the whole evidence the plaintiff could not recover. The judge refused to make this first ruling requested by the defendant and submitted the case to the jury, who returned a verdict for the plaintiffs in the sum of $2,000. The defendant alleged exceptions, relying upon its exception to the refusal of the judge to make such first ruling.

*A. J. Jennings,* (*I. Brayton* with him,) for the defendant.

*J. W. Cummings,* (*C. R. Cummings & J. W. Nugent* with him,) for the plaintiffs.

BRALEY, J. The defendant, having waived the exceptions to the admission of evidence, contends, that the jury should have been instructed in accordance with its first request, that upon all the evidence the plaintiffs could not recover. If it be assumed that under R. L. c. 104, § 27,* and the decision in *Doolan* v. *Pocasset Manuf. Co.* 200 Mass. 200, there was evidence for the jury of the defendant's negligence, the more difficult question is whether

---

* Relating to safety devices for elevators.

the plaintiffs were properly allowed to go to the jury on the question of the decedent's due care.

The roving for the mules was kept in the card room below, and the back boys, among whom was the decedent, when roving was needed passed down the stairway and returned with it by way of the elevator. When in operation the trap doors at the level of the different floors automatically opened as the elevator approached, and closed after it had passed, while the counterweight rope, being attached with the elevator rope to the same drum, moved with equal speed. The space bounded by the guide posts had not been enclosed, and as the elevator ascended the counterweight unwound passing from story to story through holes cut in the floors.

The defendant does not deny that in some unexplained manner the decedent was struck and killed by the counterweight. It is urged by the plaintiffs, that the jury could have found that, while the decedent was looking through the hole to ascertain whether there was any roving in the card room before going for it, the elevator, having been set in motion, ascended, opening the doors of the platform, by one of which he was caught and held while the counterweight came down and killed him. It was in evidence that a few days before the accident the second hand of the mule room directed him "when he wanted roving to go down stairs and get it," but this direction did not assume that he would look through the counterweight hole before doing his work in the usual way. A safe mode of communication between the card room and the mule room having been provided, if the decedent to gain time or for other personal reasons chose to use some other method, he did so voluntarily. *Galvin* v. *Old Colony Railroad,* 162 Mass. 533. Appreciation of the danger of contact with a moving appliance depended upon his sense of sight and ability to comprehend the possibility of bodily harm, which are not shown to have been limited to such an extent as to prevent his comprehension of conditions where the mechanism of an elevator which had been frequently operated by him in the performance of his regular duties was plainly visible. *Regan* v. *Lombard,* 192 Mass. 319, 323. *Goudie* v. *Foster,* 202 Mass. 226, 228. *Healy* v. *Gilchrist Co.* 205 Mass. 393.

No eyewitness saw his movements on the day of the accident

from the time he started in the direction of the elevator until his lifeless body was found with the head partially in the hole in the mule room floor, and the counterweight resting upon the side of the face. Previously to his employment by the defendant he had worked as back boy in several mills, and whether he acted with ordinary prudence for a youth of his years and understanding could be ascertained only from his conduct before and during the opening of the doors. The position he at first assumed, and what precautions he may have taken to ascertain whether the elevator was moving, and to avoid coming in contact with it before or while using the hole as a means of observation, are matters of pure conjecture. The burden of offering some affirmative proof rested on the plaintiffs. It is not sufficient that an hypothesis which accounts for the injury without his fault is more reasonably probable than the defendant's theory which attributes it to his negligence. *Crowell* v. *Moley,* 188 Mass. 116. If the evidence is viewed in the light most favorable to the plaintiffs, this inquiry results in an irremovable uncertainty, and the jury should have been instructed that the action could not be maintained. St. 1909, c. 514, §§ 127–133. *Taylor* v. *Hennessey,* 200 Mass. 263. *Prince* v. *Lowell Electric Light Co.* 201 Mass. 276. *French* v. *Sabin,* 202 Mass. 240.

*Exceptions sustained.*