BEDA C. HYDREN *vs.* ERNEST S. WEBB.

Norfolk.   December 3, 1914. — December 30, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* In maintaining elevator.   *Landlord and Tenant.   Practice, Civil,* Judge's charge.

If a woman, who occupies a tenement on the second floor of a tenement house, which has in the space adjoining the balustrade of a staircase an unboxed small elevator that is operated only by the janitor and is used to carry materials to the different tenements and to bring ashes and other waste from the tenements to the yard, at a time when she knows that the elevator car is at rest above her floor and that the janitor is on a floor below her, leans over the balustrade of the

stairway to ask the janitor to do something for her and thus gets under the elevator car, which at that moment falls by reason of a defect due to the negligence of the owner of the building and strikes her head, causing injuries, it cannot be said that she was negligent as a matter of law, and in an action against the owner of the building for her injuries thus sustained she is entitled to go to the jury.

A portion of a charge of a presiding judge is not erroneous, as applied to the evidence, which correctly called the attention of the jury to matters which it was material for them to consider.

Tort, against the owner of a tenement house numbered 34 on Station Street in Brookline by a tenant occupying a tenement on the second floor of the house, for personal injuries sustained on May 3, 1912, from being struck on the head by an elevator in the building when it fell by reason of its defective and unsafe condition alleged to have been due to the defendant's negligence. Writ dated August 23, 1912.

In the Superior Court the case was tried before *McLaughlin, J.* The facts which could have been found upon the evidence are stated in the opinion. The bill of exceptions contained the following statement: "There was evidence which would warrant the jury in finding that the defendant was guilty of negligence in the maintenance of the elevator in respect to the rope and the clutch, and that the plaintiff suffered injuries by its falling upon her in consequence of its negligently defective condition."

The plaintiff on her direct examination testified as follows: "I went out to talk to the janitor, through my kitchen door, and asked the janitor to put in my screens. I called him, 'Joe, will you please put my screens in?' and after that I don't remember anything. When I came out of my kitchen door I went down the next stairs. I didn't stop right there. I went on to the second; there are three different parts of steps. I went down to the middle. I don't remember what step I stood on, but I suppose it was by the window. I was standing there when I spoke to Joe. He did not say anything, at least I don't remember if he answered. The elevator was up, but I don't know how high; it was above where I was standing, I think to the upper flight; I think the flight over where Mrs. Jenkins lived. I could not see him (Joe), but I just heard him rattling some paper. The elevator was not in motion. I do not remember having any other talk with him that morning, except to ask him to put in the screens. No one ever

told me to be careful about the elevator, or anything of that kind."

The plaintiff occupied one of the tenements on the second floor. There was access to this tenement from the front and the rear of the building, a stairway leading from the front or street door and another leading from the back or yard door. The back stairs ran by the rear wall and were lighted by windows opening thereon. The stairway was finished with a banister and top rail, the top rail being from three to four inches wide. The balustrade or banister was about two and a half feet high. The stairs were what is called a box stairway. "In the space between the landings and the stairway there was an elevator or lift, running from the cellar to the top landing. This was not a passenger elevator and was not used as such, but was of a character known as a dumb-waiter, and was used for the purpose of carrying material to the different tenements and bringing ashes and other waste from the tenements to the yard. The elevator was not boxed and moved slowly and noisily.

"The defendant employed a janitor about the place, whose duty it was to operate the elevator, and who alone had charge of it and the right to operate it, the tenants being entitled to the benefit of the use of the elevator in the control and operation of the janitor, and being entitled also to the services of the janitor in connection with the operation of the elevator."

"The elevator consisted in part of a platform about two feet six inches long and about two feet wide. Three sides of this platform were fenced in by a guard fence about two and one half feet high. The fourth side, facing the landings, was open so that material could be put upon it and taken off without lifting it over the fence or rail of the elevator platform. The banister that went along the stairs continued on the landing by the elevator at the same height as it was on the stairway. To put material upon the elevator from a landing it was necessary to raise the platform of the elevator to the level of the top of the rail on the landing, and then to put the material to be taken up or down on the elevator at this elevation. There was no gate from the landing of the tenements opening on to the elevator.

"The janitor of the building testified that on the day of the accident he had been to the top floor to get the ashes and other waste

material of the tenants occupying the flats on that floor, and came down to the second floor and took the waste from there, and emptied the contents of the cans containing the waste from the tenements on this floor into the cans containing the waste from the upper floor, carried them to the landing of the first floor and took them out of the building. He then put the cans on the elevator preparatory to lifting them to the third floor. At this time, the plaintiff walked down the first set of steps from her landing on to the second set for the purpose of speaking to the janitor, who stood on the first landing, about putting in some window screens. She leaned over the balustrade outside the steps and said something to the janitor which he did not understand. As she was so leaning and speaking to the janitor, the elevator, which was above her, fell in consequence of the breaking of the rope which supported it in place and the failure of the safety clutch to hold. It struck her upon the head, causing the injuries complained of."

At the close of the evidence the defendant, besides asking for other rulings which were made by the judge, asked him to make the following rulings:

"1. On all the evidence the plaintiff is not entitled to recover and the verdict should be for the defendant."

"4. If the plaintiff put her head so far into the elevator well as to be struck by the falling elevator, that was negligence on her part.

"5. If the injury to the plaintiff happened in consequence of her putting her head so far into the elevator well as to be struck by the elevator when it fell, then such act on the part of the plaintiff is negligence contributing to the injury, and she is not entitled to recover.

"6. In this case, the danger from a falling elevator was obvious, and it was negligence on the part of the plaintiff to put her head so far into the elevator well as to expose herself to contact with the elevator when it fell.

"7. If by looking into the elevator well, the plaintiff knew, or ought to have known, that the elevator was up above the level of the place where she stood, and she thoughtlessly put her head into the elevator well so that it came in contact with the elevator when it fell, such act on her part was negligence, contributing to the injury, and prevents her from recovering."

The judge refused to make any of these rulings and submitted the case to the jury, the only portion of his charge excepted to being described in the opinion.

The jury returned a verdict for the plaintiff in the sum of $1,600; and the defendant alleged exceptions.

*D. N. Crowley,* for the defendant.

*A. D. Hill & L. Goldberg,* for the plaintiff.

SHELDON, J.   We accept fully the doctrine that it is obviously dangerous for one to put his head or any part of his body into the line of passage of an elevator car when the car is falling or moving or may be expected to fall or move toward him. *Murphy* v. *Webster,* 151 Mass. 121, and 156 Mass. 48. *Degnan* v. *Jordan,* 164 Mass. 84. *Ramsdell* v. *Jordan,* 168 Mass. 505. *Cowen* v. *Kirby,* 180 Mass. 504. So too one who walks into an open elevator well is, unless something more appears, guilty of contributory negligence. *Taylor* v. *Hennessey,* 200 Mass. 263. *Amiot* v. *Foster,* 213 Mass. 573. And see the cases collected by Loring, J., in *Humphreys* v. *Portsmouth Trust & Guarantee Co.* 184 Mass. 422, 424. For like reasons a passenger in an unboxed elevator acts at his peril if without necessity he suffers any part of his body to protrude beyond the plane of the car. *McDonald* v. *Dutton,* 190 Mass. 391; 198 Mass. 398, 400.

But in all such cases it is upon the particular facts presented that the court must determine the question whether as matter of law the conduct of the plaintiff conclusively shows that he was not in the exercise of due care. *Carey* v. *Arlington Mills,* 148 Mass. 338. *Gordon* v. *Cummings,* 152 Mass. 513, 517. *Ballou* v. *Collamore,* 160 Mass. 246. *Humphreys* v. *Portsmouth Trust & Guarantee Co.* 184 Mass. 422. *Wright* v. *Perry,* 188 Mass. 268. *Wills* v. *Taylor,* 193 Mass. 113. *Hamilton* v. *Taylor,* 195 Mass. 68.

Accordingly in *Degnan* v. *Jordan,* 164 Mass. 84, stress is laid in the opinion of the court on the fact that from the situation of the elevator the plaintiff had notice that something about it was probably out of order; and this was assigned as a reason for holding that his conduct in getting under the car was lacking in due care. In the case at bar the plaintiff had no such notice.

The janitor employed by the defendant had charge of this elevator, and was the only person who had the right to operate it. The car was stationary on the floor above the plaintiff, and the

janitor was on a floor below her. She had occasion to speak to him; and to attract his attention she leaned over the balustrade of the stairs, so that her head came directly into the line of descent of the car. Just then the car fell, struck her head, and injured her. There was evidence that the fall was due to the negligence of the defendant in allowing the rope that held the car and the safety clutch to be in a defective condition.

The jury could find that the plaintiff was justified in believing that the car would not be moved until the janitor should have started it. She knew that the car was above and the janitor below her. She was not bound to know or to apprehend that the apparatus which held the car was defective, or that the defendant had been negligent with regard thereto. As in many of the cases cited above, the jury could find that she had a right to rely to some extent on the defendant's having performed his duty, when there was nothing to indicate the contrary, and on the presumption that the usual course of events would be followed. Doubtless she assumed the risk of the ordinary operation of the elevator; it may be that if some temporary substitute of the janitor had been put in charge of the elevator and had started it down and this had caused her injury, it could not be said that she was in the exercise of due care. But in the opinion of a majority of the court we cannot hold that as matter of law she was bound to anticipate and guard against what did happen, and therefore it did not appear conclusively that she was negligent.

It follows that there was no error in the refusal of the defendant's requests for instructions, so far as these were refused.

The part of the charge to which the defendant specifically excepted was not erroneous, as applied to the evidence. It called the attention of the jury to matters which it was material for them to consider.

*Exceptions overruled.*