WILLIAM FOLLINS, administrator, *vs.* GEORGE A. DILL, trustee.

Suffolk. December 3, 1914. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant. Negligence,* Of one in control of building. *Elevator.*

A lease of "the third floor with the exception of the staircases and elevator wells" of a six story building contained the following provision: "This is a lease of the floor space only excepting that the staircases may be used by the lessee for the purpose of access to and from the herein leased premises. . . . The lessee agrees to use the freight elevator for freight purposes only and will allow no person to ride on same." A person invited or permitted by the lessee to come upon the leased premises to take away paper stock went up to the third floor in the freight elevator, and, finding no paper stock, attempted to return in the same manner, but the freight elevator had moved upward and he stepped into the elevator well where he supposed the elevator to be and was killed. There was a passenger elevator for the use of the tenants and those having the right of access to their leased premises. In an action against the owner of the building for causing the death, there was evidence, which was admitted without objection, that there was a custom in the building that while delivering freight the person in charge of it might ride on the freight elevator. *Held,* that the plaintiff's intestate had no right to use the freight elevator at the time he was killed, because he was not delivering freight nor in charge of any freight, so that, even assuming that the express covenant in the lease could be changed by a custom of the building, a verdict must be ordered for the defendant.

If the owner of a six story building, the different parts of which are leased to various tenants, retains control of the elevators and maintains a gate on each floor to prevent persons from falling into the well of a freight elevator, and these gates,

are designed to be raised by a person using the freight elevator at the floor at which he wishes to get off and are designed to slide back into place when the elevator leaves that floor, but owing to a want of proper lubrication, which ought to have been done by an employee of the owner of the building, one of these gates remains up when it should have dropped to the floor after the elevator had left the landing place, whereupon a person, to whom the owner of the building owes a duty greater than that which he would owe to a mere licensee or a trespasser, relying on the absence of the gate steps into the elevator well at the place where he supposes the elevator to be and is killed, in an action for causing his death a finding is warranted that the owner of the building was negligent.

A lease of the third floor of a six story building "with the exception of the staircases and elevator wells," which is "a lease of the floor space only," cannot be interpreted to mean that the lessee has control of a gate placed at the well of a freight elevator to prevent persons from falling down the well when the elevator is not there, which has to be raised by a person getting out of the elevator at that floor and is designed to slide back to the floor after the elevator has passed away from it.

A covenant in a lease of the third floor of a six story building "with the exception of the staircases and elevator wells," that "the lessee will defend any law suit and pay any claim or damage arising from any accident or accidents to any person, persons or property in consequence of his occupancy of the herein leased premises," does not protect the lessor against direct liability to one injured through his negligence in regard to an elevator well of the building which is not leased to the tenant nor within the tenant's control.

If a person on the third floor of a six story building, who has landed from a freight elevator at that floor after pushing up a gate, returns a few moments later and sees that the gate is still up, and, relying on that fact and not noticing the absence of the elevator on account of the darkness of the place, thinks that the elevator has remained at the landing, and, stepping where he supposes it to be, falls down the elevator well, he is not negligent as matter of law.

TORT by the administrator of the estate of Richard I. Follins against the owner of the building numbered from 19 to 25 inclusive on Eliot Street in Boston for the death and conscious suffering of the plaintiff's intestate caused by falling down an elevator well in the defendant's building on November 2, 1911, the declaration containing a count for each of these causes of action.

In the Superior Court the case was tried before *Lawton, J.* The jury took a view of the premises. The facts which could have been found upon the evidence are stated in the opinion. At the close of the evidence the defendant asked for various rulings, including the seventh and eighth which are mentioned in the opinion and which were as follows:

"7. The plaintiff cannot recover under the first count of the declaration.

"8. The plaintiff cannot recover under the second count of the declaration."

The judge refused to make either of these rulings. The jury returned a verdict for the plaintiff on both counts, assessing the damages for the death in the sum of $1,700 and for conscious suffering in the sum of $500. The defendant alleged exceptions.

The case was argued at the bar in December, 1914, before *Rugg*, C. J., *Braley, Sheldon, De Courcy, & Crosby*, JJ., and afterwards was submitted on briefs to all the justices constituting the court.

*C. S. Knowles*, for the defendant.

*J. G. Walsh,* (*W. J. Sullivan* with him,) for the plaintiff.

RUGG, C. J. The plaintiff's intestate received mortal injuries by walking into a dark place where he supposed was an elevator, but which in fact was an elevator well. A crucial question is whether the plaintiff's intestate had a right to use the elevator at the time. Whether he had that right depends in turn upon the right of one Aronson, a tenant of the defendant. The plaintiff's intestate had no greater right than Aronson, by whose invitation or permission he came upon the premises to take away paper stock. Expecting to get such freight from Aronson's premises, he had ridden up in the elevator with a companion and, finding no freight, was trying to ride back on the same elevator when injured. It was a freight elevator exclusively in the control of the defendant. The premises of Aronson were on the third floor of a six story building. Aronson occupied the premises under a written lease from the defendant of "the third floor with the exception of the staircases and elevator wells of the building," which contained this clause: "This is a lease of the floor space only excepting that the staircases may be used by the lessee for the purpose of access to and from the herein leased premises. . . . The lessee agrees to use the freight elevator for freight purposes only and will allow no person to ride on same." There was a passenger elevator for the use of Aronson and those having the right of access to his tenement. It is plain that under the terms of the lease the plaintiff cannot recover. It explicitly prohibits persons from riding on the freight elevator.

It is urged that there was evidence of a custom to control the express clause of the lease. The entire testimony on that point,

all of which appears to have been admitted without exception, is from the defendant, in these words: "It was the general custom, when Aronson or any tenant on the second floor had some freight to be delivered there, that the man delivering the freight would come to the elevator, put it on the elevator and go with it to the floor. This was a freight elevator, used for raising and lowering freight to various tenants, and used by the tenants and by people going there, for the delivery of freight to the tenants and for the taking away of freight. As far as I know, that was the common custom in the use of that elevator by people having business with the tenants of the building. I presume, in delivering freight or merchandise of any description to the various tenants, the person delivering it would put it on the elevator and then go with it to the floor and deliver it." That testimony does not contradict the terms of the lease. It goes no further than to show that while delivering freight the person in charge of it might ride on this elevator. That apparently was an incident necessary to the use of the elevator exclusively for freight. That is the limit which anybody using the freight elevator in the right of the tenant Aronson could go. The plaintiff's intestate was not doing or intending to do that. It is plain that if Aronson had been in the shoes of the plaintiff's intestate he could not recover. No freight was on the elevator at this time. The plaintiff's intestate and his companion had no freight for Aronson when they went up and they had none to bring down from Aronson's premises. Under these circumstances they had no right to ride down on the freight elevator. They either should have used the passenger elevator or descended the stairs. Even if it be assumed in favor of the plaintiff that an express covenant in an instrument under seal may be changed by conduct, the testimony falls far short of warranting the inference that the express agreement in this lease had been waived or modified to the extent of allowing two persons, the plaintiff's intestate and his companion Cole, to ride up in this elevator to Aronson's floor in the hope of getting freight, and when they failed to find any, to ride down again in the freight elevator, without taking any freight either way. The evidence does not cover any such situation as the present.

The case is plainly distinguishable from *Stewart* v. *Harvard College*, 12 Allen, 58. *Boyle* v. *Columbian Fire Proofing Co.* 182

Mass. 93, upon which the plaintiff also relies, did not involve the terms of a written lease. Covenants in leases must be given effect, and express contractual rights under written instruments must be preserved even when in conflict with an humanitarian impulse. This defendant is warranted in asking a court of law to protect him against legal liability for the misfortune of which the plaintiff complains. In the opinion of a majority of the court a verdict should have been directed for the defendant, as set forth in his requests numbered seven and eight.

It is not necessary to determine whether the plaintiff's intestate was a licensee or a trespasser, and that question is left undecided. The point whether such an express covenant can be modified by custom or usage, and, if it can be, what evidence is necessary to show such modification, has not been argued, is not necessarily involved, and no opinion is expressed upon it. See *Boruszewski* v. *Middlesex Mutual Assurance Co.* 186 Mass. 589, 593; *Hastings* v. *Lovejoy,* 140 Mass. 261; *Thomas* v. *Barnes,* 156 Mass. 581; *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 194.

As the case may be tried again, it becomes necessary to pass upon other points which are likely to arise.

The defendant as the owner of the building retained control of the elevator with its appurtenances, but no operator was furnished by him. On each floor there were fire doors between the elevator well and the adjoining leased premises, and on the well side of the doors was a "semi-automatic" gate of wood. Counterweights were connected with it by a rope and pulley. The gates were not lifted automatically as the elevator approached a landing. The operator, when he wished to get off at any floor, pushed up the gate until a steel spring on its inner side came in contact with a leather pad attached to the elevator, and the friction between the spring and the pad held the gate in that position. If the elevator was lowered, the gate was designed to go down with it as far as the floor and protect the landing. If the elevator was raised, as soon as the pad was removed from contact with the spring the gate was designed to drop to its position on the floor. There was evidence that on a number of occasions both before and after the accident the gate at the third floor, where the intestate was injured, was in bad condition, remaining up at times when it should have dropped to the floor after the elevator had left the

landing place, and that this condition was due to the fact that the runways of the gate were not properly lubricated, work which ought to have been done by an employee of the defendant. This was enough to warrant a finding of negligence on the part of the defendant, provided he owed a duty to the plaintiff greater than that which he would owe to a licensee or trespasser.

The defendant contends that the clause in the lease to the effect that the demised premises included "The third floor with the exception of the staircases and the elevator wells. . . . This is a lease of floor space only . . ." vested control of the elevator gates in the tenant. But this is not a fair construction of the lease. The gates were so connected with the elevator that express and definite stipulation would be required to place responsibility for their care upon a tenant when the elevators remained in care of the landlord. There is nothing inconsistent with this conclusion in *Galvin* v. *Beals*, 187 Mass. 250, relied on by the defendant.

The covenant in the lease that "the lessee will defend any law suit and pay any claim or damage arising from any accident or accidents to any person, persons or property in consequence of his occupancy of the herein leased premises," does not protect the defendant against direct liability to one injured through his negligence upon that portion of the estate not demised to the tenant. Whatever may be the respective rights of the landlord and tenant under such a covenant, it does not prevent a person injured from resorting to the liability of the one whose tort has harmed him. The principle established by *Wixon* v. *Bruce*, 187 Mass. 232, *Cerchione* v. *Hunnewell*, 215 Mass. 588, and like cases, relates to a contractual obligation of the tenant coupled with complete control of the estate whence the injury springs, and not to a case like the present.

The question of the due care of the intestate was for the jury. There was evidence that he had left the elevator at Aronson's place of business after pushing up the gate. When he returned a few moments later he saw that the gate was still up, and, relying on that fact, thought that the elevator had remained by the landing. The place was dark and he did not notice the absence of the elevator platform when he stepped forward into the elevator well. The gate fell into its place when his companion, Cole, walking

behind him, was about two feet from the well. *Cary* v. *Arlington Mills,* 148 Mass. 338. *Hamilton* v. *Taylor,* 195 Mass. 68. *Humphreys* v. *Portsmouth Trust & Guaranty Co.* 184 Mass. 422. See *Hydren* v. *Webb,* 219 Mass. 542, 546. In the respect that there was a guarding gate in the case at bar, there is distinction between it and *Taylor* v. *Carew Manuf. Co.* 140 Mass. 150; *S. C.* 143 Mass. 470. The case is distinguishable, also, from *Taylor* v. *Hennessey,* 200 Mass. 263, and *Amiot* v. *Foster,* 213 Mass. 573.

*Exceptions sustained.*