JOSEPH P. CUSSEN, administrator, *vs.* WARREN B. P. WEEKS & another, trustees.

Suffolk.    March 12, 1919. — April 11, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Of one controlling real estate, Freight elevator.

In an action by an administrator against the owner of a business building for causing the death of the plaintiff's intestate by falling down the well of a freight elevator by reason of the giving way of the gate or bar of the elevator well, there was evidence that the intestate was employed as shipper by the lessee of the second floor of the building, that the lease of his employer included the use of "the freight elevator (for freight only), during ordinary business hours, in common with the other tenants in said building," that the elevator gate and the runs or guides connected with it were retained under the control of the defendant, who repaired them both before and after the accident, that the iron strips or guides were inside the elevator well on the brick wall, and that the metal shoes or grooves on the ends of the gate fitted upon the guides, holding the gate in place and allowing it to slide up and down, that the intestate went to the well to assist an expressman on the premises, who had shouted up to have the elevator sent down, and that, as he leaned slightly against the gate at the elevator opening looking up, almost instantly the gate left its guides and swung out into the well held by some rope, whereupon the intestate fell to the bottom of the well and was killed by the fall. It could have been found that the accident was due to the fact that the iron runs or guides were not inserted far enough into the grooves or shoes on the gate and that this condition was a violation of the regulations of the board of elevator regulations. *Held,* that there was evidence for the jury that the death of the intestate was caused by negligence of the defendant.

TORT by the administrator of the estate of John F. Sullivan, for causing the death of the plaintiff's intestate on December 3, 1915, by falling down the well of a freight elevator in a building owned by the defendants and numbered 23 on Knapp Street in Boston, by reason of the negligence of the defendants in failing to maintain in a safe and proper condition the gate, rail or bar

of the elevator well on the second floor of the building. Writ dated May 4, 1916.

The defendants' answer, besides a general denial, contained an allegation of contributory negligence on the part of the plaintiff's intestate.

In the Superior Court the case was tried before *Chase,* J. The material evidence is described in the opinion. At the close of the evidence the judge on motion of the defendants ordered a verdict for the defendants; and the plaintiff alleged exceptions.

The approval of elevator regulations of the board of elevator regulations by the Governor and Council on June 29, 1915, referred to in the opinion, was under authority of St. 1913, c. 806, § 7.

*A. T. Smith,* (*W. J. Drew* with him,) for the plaintiff.

*E. K. Arnold,* for the defendants.

De Courcy, J. The plaintiff, as administrator of the estate of John F. Sullivan, seeks to recover damages for the death of his intestate, resulting from a fall down an elevator well in a building owned by the defendants. Sullivan was a shipper in the employ of the Columbia Graphophone Company, which hired the second floor for stock room purposes. The lease included "the use of steam heat and the freight elevator (for freight only), during ordinary business hours, in common with the other tenants in said building." The evidence would warrant the jury in finding that on the morning of December 3, 1915, an expressman entered the premises of the graphophone company, approached the elevator well and shouted up to have the elevator sent down; that Sullivan then came over to him and was leaning slightly against the gate at the elevator opening and looking up, when almost instantly the gate left its guides and swung out into the well held by some rope; that the expressman succeeded in catching the side of the doorway but Sullivan fell to the bottom of the well.

The premises of the lessee were approached by ascending a common stairway from the first floor, and crossing the "stair hall" or common passageway, from which a metal covered door opened inward into the stock room. On a line with this door there were folding iron doors at the elevator well, which also opened into the premises of the lessee, the portion of the building devoted to stairways and elevator being enclosed by brick walls and fire

doors. The distance between the fire doors and the elevator gate was fourteen and one half inches, and a threshold of cast iron covered this space. The gate was entirely within the elevator well. It was made of two horizontal bars of wood, parallel with each other, the ends fitted into two uprights and braced across the upper corners. It was about three feet four inches high and almost five feet wide. The iron strips or guides were inside of the well on the brick wall and the metal shoes or grooves on the ends of the gate fitted upon the guides, holding the gate in place and allowing it to slide up and down.

When the lease is read in the light of the plans and other evidence, it seems clear that the landing gate and the runs connected therewith were not a part of the demised premises, but were retained under the control of the defendants. And such is the practical construction of the lease which the defendants adopted and acted upon when they repaired the elevator gate and its appliances, both before and after the accident. See *Menage* v. *Rosenthal*, 175 Mass. 358, 361; *Nash* v. *Webber*, 204 Mass. 419, 424. The covenants dealing with liability for loss or damage to any person on the premises, and saving the lessors harmless and indemnified from liability that may be incurred "by reason of any accident in said premises" are not applicable to the elevator gate. Further such covenants between the parties to the lease would not protect the defendants against direct liability to a third person who is injured through their negligence. *Follins* v. *Dill*, 221 Mass. 93, 98. *Maran* v. *Peabody*, 228 Mass. 432.

There was evidence for the jury that the defendants failed in the duty they owed to the intestate. It could be found that the accident was due to the fact that the iron run was not inserted far enough into the grooves or shoes on the gate. This condition was in violation of the elevator regulations, approved by the Governor and Council June 29, 1915, which provide: "Gates are to be made of metal or of hard wood, and are to be strong and rigid and so constructed and installed that they cannot be sprung from their guides." It also appeared from the testimony of one of the defendants that the gates "were all the time being broken by tenants and by teamsters" and that this witness "was constantly repairing them." Apparently the repairs made after the accident consisted of the insertion of a wedge

between the guide and the beam on which it was screwed, so that the guide would fit closely into the shoes on the side of the gate, and hold it securely in place.

On the evidence the jury could find that the gate and its appliances were in an improper and unsafe condition and that the defendants by the exercise of reasonable care could have discovered and remedied this condition before the accident. *Hamilton* v. *Taylor*, 195 Mass. 68. *Follins* v. *Dill, supra.* Plainly the issue of the plaintiff's due care was for the jury.

*Exceptions sustained.*