WILLIAM M. MURPHY *vs.* THE ALPINE PRESS INC.

Suffolk.   May 15, 1935. — June 25, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Landlord and Tenant*, Lessee's liability in tort, Elevator gate. *Negligence*, Of one owning or controlling real estate.

In an action for personal injuries caused by the breaking of a defective freight elevator gate, evidence that the defendant was lessee of an entire floor in the building, that he had the right to use the elevator in common with other tenants, that the elevator was maintained by the owner of the building, and that the plaintiff was using the elevator on the defendant's business was not enough to show that the gate was part of the defendant's premises or under the general control of the defendant, or that the defendant had taken "exclusive temporary control" of it while the plaintiff was using it; the defendant owed the plaintiff no duty to keep the gate in proper condition, and the plaintiff could not recover.

TORT.   Writ dated November 24, 1930.

The action was tried in the Superior Court before *Goldberg*, J., who, after the recording of a verdict for the plaintiff in the sum of $12,900, ordered entered a verdict for the defendant under leave reserved. The plaintiff alleged exceptions.

*F. J. Carney*, (*W. J. Killion* with him,) for the plaintiff.

*J. F. Cavanagh*, for the defendant, submitted a brief.

QUA, J.   The defendant as lessee under a written lease occupied the sixth or top floor of a building on Congress Street, Boston, known as the Oliver Ditson Building. The plaintiff, an employee of one Hill, who was engaged in the

trucking business, came to the defendant's premises for the purpose of getting some bundles of paper to be delivered for the defendant. The paper was to be lowered to the street level by means of a freight elevator. While the plaintiff at the sixth floor was reaching out over the elevator shaft to manipulate the cable by which the elevator could be brought up, the bar of the wooden gate against which he was leaning broke, and he was precipitated down the shaft, suffering personal injuries. This action is brought for alleged negligence in the maintenance or control of the gate.

The question arises at the outset whether the defendant tenant owed any duty to the plaintiff with reference to the condition of the gate. Neither party offered the lease in evidence. Oral testimony from witnesses called by the plaintiff tended to show the following: The gate was "a single bar two-legged gate." It "was operated automatically with the elevator," so that when the elevator came to the sixth floor it raised the gate and when the elevator went down the gate dropped into place by gravity. There were various tenants on the different floors who used the elevator. Repairs on the elevator and elevator shaft have been made on a number of occasions over a period of two years on the order of an engineer "who is connected with the building" or of agents for the owners. The engineer "O. K.'d" the bills and sent them to the agents who "settled" for them.

A witness called by the defendant testified that "he is employed . . . by the Boston Safe Deposit Company representing the Ditson Estate . . . he is engineer of the steam plant . . . and has the general care of the building, the elevators included"; that the elevators were used in common by various tenants, each tenant operating them himself; that he had charge of making repairs on the elevators; that as engineer he ordered gates installed in the building whenever it was necessary; and that he could not tell who would install the gate on the sixth floor in the ordinary course. In answer to interrogatories the defendant stated that it occupied the "sixth floor."

We discover nothing in this which would justify a jury in

drawing the inference that the gate which broke was a part of the premises leased to or in the control of the defendant. Even the evidence introduced by the plaintiff tends to show that the gate was a part of the mechanism of the elevator, and that control of the elevator and shaft remained in the owners of the building. Evidence that the defendant occupied the sixth floor under a lease does not show that the elevator gate on that floor was included in the demised premises. In *Follins* v. *Dill*, 221 Mass. 93, at page 98, this court said "The gates were so connected with the elevator that express and definite stipulation would be required to place responsibility for their care upon a tenant when the elevators remained in care of the landlord." *Cussen* v. *Weeks*, 232 Mass. 563.

Cases cited by the plaintiff, such as *Lowell* v. *Strahan*, 145 Mass. 1, and *Leominster Fuel Co.* v. *Scanlon*, 243 Mass. 126, where it was held that a lease of a floor or story in a building should be construed as including outside walls between the floor levels, have no bearing here. There were in those cases no elevators with their vertical shafts transecting all the floors, obviously adapted for the use of all the tenants, all forming part of one installation and requiring single management and control.

The plaintiff further contends that the jury could have found that the defendant had "exclusive temporary control" of the gate while the plaintiff was using it, and had made the elevator and gate "instrumentalities" of its business which it directed the plaintiff to use in carrying out the defendant's purposes. On this point he cites *McNamara* v. *Gillette Safety Razor Co.* 214 Mass. 163, 165, and various cases where it has been held that a defendant has taken possession and control of railroad cars and made them a part of its own equipment and has therefore become responsible for their condition as if they were its own. *Spaulding* v. *W. N. Flynt Granite Co.* 159 Mass. 587. *D'Almeida* v. *Boston & Maine Railroad*, 209 Mass. 81, 86, and cases cited. But we think there was no evidence to show that the defendant took possession of the elevator or gate and made it a part of its own equipment or that its use of them

was otherwise than under its rights as one tenant making use of apparatus provided for the common use of all tenants. It is immaterial that the gate remained at the sixth floor instead of moving up and down with the elevator. It does not appear that the defendant's duty with respect to the gate was any different from what its duty would be with respect to the railing of a common stairway on that floor.

As it was not shown that the gate was in control of the defendant, the defendant owed the plaintiff no duty to keep it in proper condition. *Hawkes* v. *Broadwalk Shoe Co.* 207 Mass. 117. *McNamara* v. *Gillette Safety Razor Co.* 214 Mass. 163, 164. See *Readman* v. *Conway*, 126 Mass. 374, 376; *Tremont Theatre Amusement Co.* v. *Bruno*, 225 Mass. 461, 463; *Maran* v. *Peabody*, 228 Mass. 432; *Peirce* v. *Hunnewell*, 285 Mass. 287, 290.

*Exceptions overruled.*