RICHARD F. SUMMERING vs. BERGER REALTY, INC. & another.

Suffolk.    December 7, 8, 1961. — April 2, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Landlord and Tenant*, Tenant's liability to third person, Elevator.   *Negligence*, Contributory.   *Proximate Cause.*

A tenant of a five story business building entitled to use its freight elevator in common with other tenants in the building but not in control of the elevator was not liable to a mover of a trucking company, hired by the tenant to move equipment from the building, for injuries sustained when the mover fell down the elevator shaft where it did not appear that the tenant knew of any conditions bringing about the fall which were not apparent to the mover.   [41–42]

A ruling that the plaintiff was guilty of contributory negligence was not required by the evidence at the trial of an action by a mover for personal injuries sustained one evening in a building owned by the defendant when the plaintiff in darkness fell down the shaft of a freight elevator from a loading platform where the gate to the shaft did not drop although the elevator was not at that level.   [42]

There was error prejudicial to the defendant at the trial of an action for personal injuries in a charge which might have led the jury to think that the defendant had the burden of proving that the plaintiff's negligence was the sole or "moving" cause of the injuries rather than of merely proving that the plaintiff's negligence contributed to cause the injuries.   [43]

TORT.   Writ in the Superior Court dated August 12, 1957.

The action was tried before *Swift*, J.   Verdicts were returned for the plaintiff against both defendants.

*Dana J. Kelly*, for the defendant Berger Realty, Inc.

*Joseph P. Rooney*, (*Ansel B. Chaplin* with him,) for the defendant Spaulding-Moss Company.

*George M. Herlihy*, for the plaintiff.

SPIEGEL, J.   This is an action of tort against Berger Realty, Inc. (hereinafter called Berger), owner of a building at Congress Street, Boston, and against Spaulding-Moss Company (hereinafter called Spaulding), a tenant on the second floor of the building, for personal injuries sustained

by the plaintiff when he fell down an elevator shaft on the premises on December 7, 1956.

The case is here upon the exceptions of both defendants to the denial of their motions to direct verdicts in their favor, to the admission of certain testimony, and to portions of the charge. Berger also took exception to the refusal of the judge to give a requested instruction to the jury. Spaulding also excepted to the order allowing the plaintiff's motion to amend his declaration and to the denial of its requests for rulings of law on the plaintiff's motion to amend.

The following is a summary of the evidence. Summering was employed by the Charles DeFeo Trucking Company as a driver and a mover. At about 5 P.M., December 7, 1956, he and one Charles DeFeo, Junior, a son of the owner of the Charles DeFeo Trucking Company, went to the premises of Spaulding at 275 Congress Street with two trucks in order to move the equipment of Spaulding to its new premises. The building, which was owned by Berger, was of five stories. Spaulding was a tenant under a written lease. An elevator shaft and freight elevator were provided for the use of all the tenants. There were openings to the shaftway at each floor and at an outside loading platform. The elevator is operated by a "shipper rope" which when pulled down would cause the elevator to go up and when pulled up would cause the elevator to go down. The elevator is locked by means of two metal balls located on the shipper rope at each landing which are fitted into a locking device on the elevator itself. If properly locked the rope cannot be pulled up or down thereby preventing the elevator from moving. If one or both of the balls are worn excessively, the rope could be pulled and thus cause the elevator to move.

Berger was in control of the freight elevator. One Yeo, manager of Spaulding's operation at Congress Street, had no knowledge of "the lighting conditions, the areaways and the loading platform." One Sadler, the supervisor of Spaulding's moving operation, "was not familiar with the elevator and the landing area on the first floor."

On the evening of the accident, the trucks were backed into an alleyway at the side of the building and up to the loading platform. There were no lights in the elevator or the alleyway. DeFeo told Spaulding's employees at the premises that there were no lights. "They" were unable to fix the elevator light so they "rigged" an extension cord and light from the second floor to the loading platform. The gate at the loading platform entrance to the elevator shaft was not operating. It was "tied up" or "chocked up" so that it did not drop in front of the shaftway entrance when the elevator was not at that level.

During the two hours prior to the accident Summering and DeFeo had gone up and down in the elevator approximately fifteen times. Just prior to the accident Summering brought the elevator down from the second floor to the loading platform, locked the elevator, and "finished loading" his truck. Shortly before he finished loading his truck the extension light went out. DeFeo "had a discussion at that time with the people at Spaulding-Moss with regard to the light." When Summering's truck was loaded, he moved it from the platform and directed DeFeo in backing the second truck into position at the platform. Summering then turned and stepped toward the elevator and fell down the shaft. After locking the elevator, the only time Summering was away from the loading platform was when he moved his truck.

There was also evidence, offered only as against Berger, that the elevator was serviced by F. S. Payne Co.; that it was inspected on November 28, 1956, and December 8, 1956, by that company; that an elevator inspector of the city of Boston examined the elevator on December 14, 1956, and "shut the elevator down, because he felt it was unsafe and dangerous"; and that the elevator had a "quirk" in that "you could lock the lock on top of the ball, and you could move the elevator."

After the jury returned verdicts for the plaintiff, Summering moved to amend count 3 of his declaration. The original count 3 alleged that Spaulding "leased and/or

controlled'' the building in question; that it ''negligently and carelessly permitted the said areaway, platform, elevator and elevator shaft to become unsafe, dangerous and defective.''

The amended count 3 alleges that Spaulding ''expressly or impliedly invited'' Summering to use the elevator; that it ''knew or should have known'' that the elevator and equipment connected therewith were ''unsafe, dangerous and defective and that some of these defects were hidden'' and as a result of Spaulding's negligence ''in failing to warn the plaintiff of hidden defects . . . and in negligently moving the elevator away from an area that it knew was improperly lighted . . .'' the plaintiff was injured.

1. There was no evidence that Spaulding was in control of the elevator, shaftway, platform or alley. On the contrary, the evidence was all to the effect that Berger retained control of those portions of the premises and that Spaulding, together with the other tenants, was merely entitled to their use. In these circumstances, Spaulding owed no duty to the plaintiff to maintain the elevator and its appurtenances in proper condition. *Murphy* v. *Alpine Press Inc.* 291 Mass. 239, 241–242.

Summering, however, contends that Spaulding ''knew or should have known of defective conditions of this elevator in the area of the platform and in particular the gate situation and lighting situation, and failure to properly remedy the situation or warn of certain defects that would be hidden by the cover of darkness constituted a breach of duty owed by one individual to another.'' This contention appears to be the theory upon which the amendment to the declaration is based. The plaintiff cites cases which impose upon the owner or possessor of premises the duty to warn an employee of an independent contractor of hidden defects known to the owner or possessor or which should have been known to him. See *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320; *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 272; *Wilson* v. *Conlin,* 338 Mass. 295, 297.

We need express no opinion whether this obligation should be imposed upon a tenant who does not control the premises where the injury occurred but who is merely entitled to the use of such premises in common with other tenants. See Restatement: Torts, § 360, comment a. In the instant case there was no evidence of defects known to Spaulding which were not apparent to Summering.

There was error in the denial of Spaulding's motion for a directed verdict.

2. As judgment must be entered for the defendant Spaulding there is no need for us to consider its exceptions to the allowance of the motion to amend the declaration, to the denial of requests for rulings of law, and to the admission of certain evidence.

3. Berger maintains that its motion for a directed verdict should have been allowed because Summering was contributorily negligent as a matter of law. Under G. L. c. 231, § 85 (as amended through St. 1952, c. 533, § 1), the defendants had the burden of proving that Summering was contributorily negligent. Only in rare cases can it be ruled as a matter of law that the burden has been sustained. *Joyce* v. *New York, N. H. & H. R.R.* 301 Mass. 361, 363. This was a question of fact for the jury to determine. See *Spencer* v. *Bartfield,* 334 Mass. 667, 668; *Hubbard* v. *Palmer Russell Co.* 343 Mass. 414, 417.

There was no error in the denial of the defendant Berger's motion for a directed verdict.

4. Berger requested the judge to instruct the jury that "the plaintiff's own conduct contributed to his injury and he cannot recover." Berger excepted to the judge's refusal to give this instruction. The requested instruction raises the same issue as that considered in paragraph numbered 3 above, namely, whether the plaintiff was contributorily negligent as a matter of law, and obviously requires no further comment.

5. Berger has not argued its exceptions to the admission of certain evidence and we, therefore, do not consider them. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.

6. The judge in charging the jury on the issue of contributory negligence stated in part that ". . . both defendants . . . have the burden of satisfying the jury that it was the negligence of the plaintiff that caused his accident and caused his injuries. Contributory negligence is not a factor in a case unless it has brought about the accident and the injury . . ." and ". . . the defendants cannot prevail on the plea of contributory negligence unless . . . [the jury] find it was the moving cause that brought about the injury and the accident." Each of the defendants excepted to that portion of the charge wherein the judge instructed the jury that contributory negligence is not a factor in the case unless it has caused or brought about the accident.

We have carefully examined the entire charge. Certain portions thereof correctly stated the law on the burden of proving contributory negligence. Other portions, however, might well have led the jury to assume that the defendants had the burden of proving that Summering's conduct was the sole or "moving" cause of the accident. This is a greater burden than that imposed by G. L. c. 231, § 85, *supra.* In order to establish the defence of contributory negligence it need only be shown that the plaintiff's negligence contributed to cause the injury. See *Healey* v. *Perkins Mach. Co.* 216 Mass. 75, 78; *Salvato* v. *Di Silva Transp. Co. Inc.* 329 Mass. 305, 310; *Neil* v. *Holyoke St. Ry.* 329 Mass. 578, 580.

The defendants were entitled to clear and adequate instructions on the issue of contributory negligence which we believe they did not receive. The unsound statements of law in the charge constituted prejudicial error.

7. The exceptions of both defendants are sustained. Judgment is to be entered for the defendant Spaulding.

*So ordered.*