GAVIN *v.* KLUGE. [275

PATRICIA GAVIN *vs.* JOHN KLUGE & another.

Suffolk. November 10, 1930. — May 25, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Negligence*, Of hairdresser, Contributory, Assumption of risk. *Waiver. Joint Tortfeasors. Practice, Civil,* Election between defendants.

At the hearing without a jury of an action of tort for personal injuries by a woman against a hairdresser and his wife, the plaintiff alleged negligence on part of the defendants while giving to the plaintiff a "permanent wave" for pay; and there was evidence that the plaintiff's hair was wrapped around a number of steel rods, which were attached to the electric current and heated very hot; that felt and rubber pads and cotton were inserted between the plaintiff's scalp and the bases of the rods to prevent contact between them and the scalp; that the defendant hairdresser "wound the hair in the operation" and his wife "did the baking"; and that the plaintiff's scalp was burned in the operation. The plaintiff testified that she "knew that the process would be uncomfortable . . . and expected to be hurt"; that "she felt some pain or discomfiture [*sic*] in her scalp but attributed it to a pulling of the hair"; that during the process she called to the attention of the defendant wife the fact that places on her scalp had become hot, whereupon that defendant inserted more cotton and used a blower to cool her head; that the operation was satisfactory and she made no complaint; and that "she had the same experience in this case as in . . . [previous] permanent waves but that she had never been burned before by the permanent waving and had never before that time heard of anyone else being burned in this manner." There was evidence for the defendants "that the attendant cannot tell if the scalp is overheated unless the customer gives information to that effect" and that customers were cautioned to inform the attendant if the scalp felt hot. *Held*, that

(1) The evidence justified the inference that the apparatus and the process were known to the defendants to be such that if precau-

tions were not taken to protect the plaintiff's scalp from the heated rods her scalp would be burned;

(2) In the matter of such precautions, the defendants were bound to exercise the ordinary skill and ability of persons engaged in their business in that locality;

(3) Even if the trial judge believed the evidence that the plaintiff was cautioned to inform the attendant if her head felt hot, a finding was not required as a matter of law that the defendants thereby performed their full duty: notwithstanding the evidence for the defendants, it could have been found that there was a practicable method of guarding against burning, which the defendants failed to adopt and which was not dependent upon a warning from the customer or any other indication that her scalp already was hot or being burned;

(4) The evidence warranted a finding that the plaintiff's injuries were caused by a failure by the defendants in their duty to guard against the rods' coming in contact with the plaintiff's scalp;

(5) The evidence did not require a finding as a matter of law that the plaintiff was guilty of contributory negligence;

(6) A finding was not required that the plaintiff assumed the risk of the defendants' negligence in treating her hair: assuming the risk of treatment by a process inherently painful is not equivalent to assuming the risk of negligence in such treatment;

(7) There was no error in the refusal of a ruling requested by the defendants that, if it were found that at the time the permanent wave had been completed and the plaintiff was about to leave the defendants' place of business she was perfectly satisfied with the work as it had been done, then the defendants must be found to have performed their work in a careful and skilful manner and were not negligent: it could not properly have been ruled that the facts assumed in such request amounted to a waiver by the plaintiff of her right to damages for injuries discovered later;

(8) Whatever the relation between the defendants, it could have been found that both were present and participated in the wrong done to the plaintiff and were jointly liable therefor; and there was no error in the denial of a motion that the plaintiff be required to elect as against which defendant she would proceed;

(9) A finding for the plaintiff against both defendants was warranted.

CONTRACT OR TORT. Writ dated August 18, 1928.

The action was heard in the Superior Court without a jury by *Fosdick*, J. The plaintiff elected to proceed upon a count in the declaration for negligence. Material evidence, and rulings requested by the defendants and refused by the judge, are stated in the opinion. There was a finding for the plaintiff in the sum of $2,500. The defendants alleged exceptions.

*R. Donovan*, for the defendants.

*E. M. Sullivan*, for the plaintiff.

FIELD, J. The plaintiff in this case in the Superior Court elected to proceed on the count in her declaration for negligence, whereby she alleged that "the defendants held themselves out to be hairdressers with a place of business in the city of Boston . . . and as such undertook to dress the hair of the plaintiff . . . that . . . due to the negligent, unskilful and careless manner in which the defendants, their agents or servants, dressed the hair of the plaintiff, the plaintiff was severely and permanently injured by the defendants applying to her head through an electrical machine or device used by the defendants, their agents or servants, electricity which caused the plaintiff's scalp to be severely burned." The defendants for answer pleaded a general denial and contributory negligence. A judge sitting without jury found for the plaintiff.

The case is here on the defendants' exceptions to the denial of a motion for judgment for the defendant John Kluge, the denial of a motion that the plaintiff be required to elect as against which defendant she would proceed, and to the refusal of the following rulings: (1) "On all the evidence judgment should be entered for the defendants"; (7) "If the court finds that the plaintiff did not notify the defendants, or either of them, during the operation that she was experiencing a burning sensation, the plaintiff is guilty of contributory negligence and cannot recover in this action"; (8) "If the plaintiff did not warn or notify the defendants, or either of them, that she was experiencing a burning sensation during the waving process, and if there was no evidence of a burning odor, then the defendants had no means of knowing that the apparatus was causing a burn and they cannot be said to have been negligent"; (9) "If the court finds that the plaintiff knew that the waving operation would be painful and uncomfortable and might cause a burn to her scalp, she is guilty of contributory negligence if she did not warn or notify the defendants, or either of them, that she was being burned"; and (10) "If the court finds that at the time the permanent wave had

been completed and the plaintiff was about to leave the defendants' place of business that she was perfectly satisfied with the work as it had been done, then the defendants must be found to have performed their work in a careful and skilful manner and were not negligent."

We perceive no error in the rulings of the trial judge.

There was evidence that the defendant John Kluge was a hairdresser with a place of business in Boston, that the other defendant, his wife, worked with him, that the plaintiff went to his place of business and was given a "permanent wave," for which payment was to be made, both defendants taking part in the process. The process of giving a "permanent wave" used upon the plaintiff, as described by her, was as follows: Her hair was twisted tightly around twenty-five to thirty "spindles" which "were steel rods about the diameter of a pencil," paper "containing a damp pad" was wrapped about the hair, "a metal clamp" was attached to the bottom of the paper, and "a felt pad and the rubber pad" inserted "between the clamp and the scalp" and cotton "between the pads and the scalp" and, after the hair was so treated, "a cylinder was placed upon" each spindle and "attached to the electric current and heated." The plaintiff testified "that the baking continued for fifteen minutes," that "she felt some pain or discomfiture [*sic*] in her scalp but attributed it to a pulling of the hair by reason of its tight winding on the spindle," that after a while "places upon her head became hot and upon calling the attention of Mrs. Kluge to this fact . . . [she] inserted more cotton between the rubber pad and the scalp" and a "cool air blower was used to cool the head." The plaintiff testified further that after the "baking" her "scalp was tender," though "there was no pain at this time," but that evening "she noticed a moist spot on her hair . . . and she knew then that it was burned although there was no pain." There was testimony as to the extent of the burn.

The plaintiff testified on cross-examination that "she had the same experience in this case as in the two prior permanent waves but that she had never been burned before by the permanent waving and had never before that time heard of

anyone else being burned in this manner . . . the operation was entirely satisfactory . . . no complaint was made by her or her mother. She knew that the process would be uncomfortable . . . that she must sit rigid or her hair would be pulled by the instrument . . . [and] knew the treatment to be more or less painful, and expected to be hurt."

There was evidence that the defendant John Kluge "wound the hair in the operation" and that "Mrs. Kluge did the baking." In answer to an interrogatory he stated that he "did the winding of the hair and supervised the cooking of the hair."

The defendants' testimony as to the process followed differed only slightly from the plaintiff's testimony, though both defendants testified that the plaintiff said that "she was very comfortable" and made no complaint that her head was hot. In the "demonstration of the use of the baking apparatus," by the defendant John Kluge, it appeared that the "spindles project outward and upward from the scalp of the customer" and "the pads, when properly adjusted, are designed to prevent contact of the spindles with the scalp; that the heating cylinders fit over the spindles like a socket and the base of these heating cylinders is about one inch away from the scalp resting upon the pads between the base of the cylinder and the scalp . . . that the attendant cannot tell if the scalp is overheated unless the customer gives information to that effect." This defendant testified that if a customer complains that the head is getting hot, the scalp is cooled with an air cooler and more cotton inserted under the rubber washer, and that the customer is cautioned to inform the attendant if the scalp feels hot. One of his employees testified that "the cylinders when heated were so hot that they could not be safely touched by the naked hand except at the handle thereof, which is made of a heat-insulating composition."

"Types of the felt and rubber pads used by the defendants were exhibited [at the trial]. These pads (both the felt and the rubber varieties) were circular in shape with a diameter of about two inches; they were in the form of a washer with their rims slit so as to permit of these pads being inserted

about the base of the spindle." "The base of the spindle when heated, it was shown by the demonstration, might come in contact with the scalp. About this spindle was first wrapped the lock of hair and this wrapping or winding started close to the scalp. The pads encircled both the hair and the base of the spindle. By the careful and skilful insertion of cotton . . . beneath the pads and above the scalp it was possible to keep the base of this spindle from coming into direct contact with the scalp."

The evidence, herein summarized, warranted a finding that the plaintiff was burned when being given a "permanent wave" by the defendants. "The plaintiff was not required to exclude all other possibilities as to the cause of the injury if by a preponderance of evidence . . . [she] proved that it was caused by the . . . [defendants'] negligence." *Navien* v. *Cohen*, 268 Mass. 427, 431, and cases cited. There was no evidence — and it is not contended by the plaintiff — that the apparatus used was defective. The evidence, however, justified the inference that the apparatus and the process were such — and known to the defendants to be such — that if precautions were not taken to protect the plaintiff's scalp from the heated spindles her scalp would be burned. In the matter of such precautions, as well as in other respects, the defendants were "bound to exercise the ordinary skill and ability of persons engaged in . . . [their] business practising in Boston." *Barnett* v. *Roberts*, 243 Mass. 233, 236. See also *Small* v. *Howard*, 128 Mass. 131; *Tucker* v. *Stetson*, 233 Mass. 81, 84; *King* v. *Belmore*, 248 Mass. 108, 113; *Ernen* v. *Crofwell*, 272 Mass. 172, 175. The judge, as the trier of fact, could have found that the defendants took such part in treating the plaintiff's hair, by way of preparing it for the heating process or carrying on or supervising that process, that each of them was under a duty to the plaintiff to take proper precautions against her scalp's being burned in the process. He could have found that proper precautions required the "careful and skilful insertion of cotton . . . beneath the pads and above the scalp " or some act equally effective, before the heating process began, in order to keep the

bases of the spindles "from coming into direct contact with the scalp," and could have inferred from the evidence that both defendants failed in their duty in this respect and that such failure caused the plaintiff's injury. The judge was not required, as matter of law, to find that the defendants performed their full duty by cautioning the plaintiff "to inform the attendant if the scalp feels hot" or, indeed, to find that such caution was given. Notwithstanding the evidence tending to show that "the attendant cannot tell if the scalp is overheated unless the customer gives information to that effect," it could have been found that there was a practicable method of guarding against burning, not dependent upon a warning from the customer or any other indication that her scalp already was hot or being burned, which the defendants failed to adopt. Compare *Carney* v. *Boston Elevated Railway*, 212 Mass. 179. Hence the defendants' eighth request was refused properly.

The judge could have found that the plaintiff called attention to the fact that her head was hot, but nothing in the evidence required a finding that she was guilty of contributory negligence in not doing so sooner. Indeed, on the evidence in the case, even if she "knew that the waving operation . . . might cause a burn to her scalp" — as to which there is little, if any, evidence — and did not at any time warn or notify the defendants that her head was hot or that she was "being burned," she was not necessarily negligent. This was a question of fact on all the evidence. The defendants' seventh and ninth requests for rulings, therefore, were refused rightly.

Nor was a finding required that when the plaintiff submitted herself to have her hair treated by the defendants she assumed the risk of their being negligent. Assuming the risk of treatment by a process inherently painful is not equivalent to assuming the risk of negligence in such treatment. See *Manter* v. *New Bedford, Martha's Vineyard & Nantucket Steamboat Co.* 246 Mass. 551, 555. *Christiansen* v. *Fantle Bros. Inc.* 56 S. D. 350, relied on by the defendants, recognizes this distinction.

There was no error in the refusal of the defendants' tenth

request.  It could not have been ruled that the facts therein assumed amounted to a waiver by the plaintiff of her right to damages for injuries discovered later.

It follows that the trial judge was right in refusing to rule that "On all the evidence judgment should be entered for the defendants," and in denying the motion for judgment for the defendant John Kluge.  Nor was there error in the denial of the motion that the plaintiff be required to elect as against which defendant she would proceed.  Whatever the relation between the defendants it could have been found that both were present and participated in the wrong done to the plaintiff and were liable therefor on the same ground and, consequently, were jointly liable.  See *Parsons* v. *Winchell,* 5 Cush. 592; *Hawkesworth* v. *Thompson,* 98 Mass. 77, 79–80; *Popkin* v. *Goldman,* 266 Mass. 531, 536.  Mechem, Agency (2d ed.), § 2010.

*Exceptions overruled.*