DAVID HERMAN *vs.* ABRAHAM E. GOLDEN.

Suffolk.    March 29, 1937. — June 29, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence,* Invited person, One owning or controlling real estate, Elevator.

If one who had agreed to become at a future date a tenant of a room on an upper floor of a building was in any way an invitee of the owner while in the building for his own purposes with the owner's permis-

sion, his invitation did not extend to his groping in a dark hallway for the elevator upon which he had been taken to the upper floor by the owner on previous visits; and the owner was not liable to him for injuries sustained when he fell down the open elevator shaft.

TORT. Writ in the Superior Court dated June 10, 1931.

The action was tried before *F. T. Hammond,* J., who, after the recording of a verdict for the plaintiff in the sum of $10,000 subject to leave reserved, ordered entered a verdict for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*R. B. Coulter,* for the plaintiff.

*J. T. Connolly & W. R. Donovan,* for the defendant.

LUMMUS, J. The defendant's father kept a store, and the defendant owned a building next door, the rooms of which he let to various tenants for business purposes. The plaintiff desired to hire a place of business, and called at the store on Wednesday or Thursday, where he found the elder Golden, who was the defendant's father and agent. The latter showed the plaintiff a loft on the third floor. After another visit on Friday, an arrangement was made on Saturday by which the plaintiff was to pay rent from the first day of May, which was the following Friday, but in the meantime could go to the premises and do anything he wished there. A deposit was made on account of the first month's rent, but the evidence was conflicting as to whether he got a key. The balance of the rent was to be paid at the first of the month.

Entrance to the building was had through double swinging doors leading into a hallway five feet wide and nineteen feet long. As one walked down this hallway, he found on the right, about eight feet from the doors, an elevator lobby six feet wide and ten feet deep. Both the hallway and the elevator lobby were lighted by a single electric light in the hallway opposite the elevator lobby. This was controlled by a switch at the back of the hallway. The elevator, which was of the platform type used for freight, ran in a shaft between the elevator lobby and the front of the building. There was an entrance to the elevator from the front of the building, but that is immaterial. There

was also an entrance to it from the elevator lobby. At this entrance there were heavy iron fire doors commonly left open. There was also a safety gate consisting of several bars with cross pieces. This gate worked in a groove of metal on one side and wood on the other, and was automatic at least to the extent that it was so designed that, if in good condition and working properly, it would descend whenever the elevator left the first floor landing, making a barrier across the entrance to the shaft. The elevator was operated by a rope which could be reached by a person standing in the elevator lobby close to the entrance to the elevator.

On the plaintiff's first visit with the elder Golden, the electric light in the hallway was on. The only light was from that electric light and from another in the elevator itself that Golden turned on. With the light on in the hallway the gate and the elevator platform were plainly seen. When the plaintiff and the elder Golden came down, the plaintiff noticed that the gate stuck, and had to be put down by hand. On Friday, when the plaintiff returned, there was no light in the hallway, and "the plaintiff could not go upstairs." He went into the store, and the elder Golden sent the janitor with him. The janitor turned on the lights, took the plaintiff to the third floor in the elevator, and came down with him. Again the gate stuck. The visit on the following day, Saturday, was a repetition of that of Friday, except that the elder Golden himself conducted the plaintiff. The gate still stuck.

On Monday, between half past nine and ten o'clock in the morning, the plaintiff entered the building alone. It was dark, and no lights were on. He did not know where the switch was. He groped his way to the elevator and tried to find the gate at the entrance to the elevator. It was not there, and he fell down the shaft, receiving serious injuries. An examination afterwards showed that the grooves in which the gate ran were dry and without lubrication.

The jury returned a verdict for the plaintiff. Under leave reserved (G. L. [Ter. Ed.] c. 231, § 120), the judge

entered a verdict for the defendant, subject to the plaintiff's exception.

There is grave doubt, to say the least, whether the plaintiff was not guilty of contributory negligence as matter of law in groping in a dark hallway for an elevator gate which he knew might not be in place, when he had only to go out to the store next door to obtain a guide. *Benton* v. *Watson*, 231 Mass. 582. *Burke* v. *Crimmins*, 256 Mass. 14. *Lanstein* v. *Acme White Lead & Color Works*, 285 Mass. 328. *Henebury* v. *Cabot*, 288 Mass. 349. *Osgood* v. *Therriault*, 290 Mass. 513. *Perry* v. *Loew's Boston Theatres Co.* 291 Mass. 332. If the plaintiff had been a tenant, it might well be contended that the defect which caused the injury existed and was known to him at the time he hired the tenement, and consequently that there was no breach of duty to him. *Sordillo* v. *Fradkin*, 282 Mass. 255, 257. But it is more clear than it was in *Sordillo* v. *Fradkin*, 282 Mass. 255, 257 (compare *Stumpf* v. *Leland*, 242 Mass. 168, 176), that the plaintiff had not become a tenant, and he may have been only a licensee. The plaintiff contends that he was neither a tenant nor a licensee, but an invitee. If so, the invitation could not be found to extend to his groping in a dark hallway under the circumstances of this case. A verdict for the defendant was required upon the evidence.

*Exceptions overruled.*