GEORGE F. E. STORY *vs.* LYON REALTY CORPORATION.

Worcester.          December 4, 1940. — January 3, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Landlord and Tenant,* Existence of relation, Landlord's liability to invitee of tenant. *Negligence,* Elevator, Contributory.

Evidence that two corporations occupied the same office in a warehouse owned by one of them, that the second stored goods in the warehouse, that in the main they had the same officers and directors, and that occupancy by the second was under an arrangement whereby, when certain alterations on the premises being constructed by the second were completed, a formal lease from the first would be consummated, would have warranted a finding that the second corporation was a tenant of the first and that the first owed to the second and to a person on the premises as its business visitor the duty to keep in as safe a condition as it appeared to be when the tenancy began an elevator and its approaches which remained in the control of the landlord and were used in common by its tenants.

A finding of liability of the owner of a building toward a business visitor of a tenant would have been warranted by evidence that the owner was in control of an elevator and its approaches, used in common by tenants, that the business visitor fell into the elevator well because gates were not in place, that when the tenancy of the tenant began the gates were in good repair and working order, and that an employee of the landlord, who had invited the business visitor to perform certain duties that might cause him to pass by the elevator, at that time knew that the gates were not in place.

A ruling was not required that a business visitor of a tenant was guilty of contributory negligence in going from out of doors on a pleasant midafternoon in May into a dimly lighted interior of a warehouse along a route used by employees of the tenant, where he fell into an elevator well unguarded by gates.

TORT. Writ in the Superior Court dated June 7, 1938. The case was tried before *Dillon,* J.

*W. F. Farr,* (*A. O. Eaton & W. H. Daly* with him,) for the plaintiff.

*G. R. Stobbs & L. E. Stockwell,* for the defendant, submitted a brief.

RONAN, J.   The plaintiff, a representative of the United
States department of agriculture, went on the morning of
May 24, 1938, to the warehouse owned by the defendant,
in which was stored a large quantity of unsalable hops
owned by The Lyon Brothers Corporation, for the pur-
pose of supervising the distribution of the hops to local farm-
ers, in accordance with a plan of this Federal department to
divert from the market certain surplus agricultural com-
modities for which the owner was to be paid.   When he
arrived at the warehouse he took a position on the loading
platform, in order to see that bales, which were brought
down from the second and third floors of the warehouse by
means of a freight elevator and then carried by hand trucks
to the platform, were loaded on the farmers' trucks and
that each farmer received the amount allotted to him.   The
work of removing the hops was done by employees of The
Lyon Brothers Corporation, hereafter called the corporation,
under the direction of one Lyon, its general manager.   From
time to time during the day, when the movement of the
hops was interrupted, Lyon left the platform, went into the
building, and the delivery of the hops was resumed.   About
half past three in the afternoon Lyon told the plaintiff that
it was necessary for him to leave and that the plaintiff
should "finish the work of getting those hops out, checked
out."   Lyon then left.   The shipment of hops stopped in
an hour and the plaintiff could hear the men joking and
laughing on the second floor.   There were trucks waiting
to be loaded and the farmers were anxious to take away
the hops.   The plaintiff went from the platform through a
door into the warehouse in search of a stairway to the upper
floors in order to have the men complete the delivery of
the hops.   He had never been on the first floor of the ware-
house before, but on a previous visit when he had observed
the hops he had seen a stairway.   He had never seen the
elevator although he assumed an elevator had been used
in movement of the goods.   At the time he left the plat-
form it was daylight.   It was dusky inside the building, but
light came through the windows at the end and he could
see when he got inside the building.   The marks made by

the trucks in transporting the bales of hops were plainly visible and he followed them into the building. The plaintiff did not recall falling into the elevator well, but he was found lying face down at the bottom of the well.

The defendant and the corporation were apparently family corporations, having in the main the same persons as officers and directors of each corporation. Both used the same office. The corporation occasionally paid some of the defendant's bills. In March, 1937, the corporation began to remodel, at its own expense, a building connected with the warehouse, and this work was still in progress on May 24, 1938, when the accident occurred. The work had then cost the corporation about $100,000. When the work of remodelling began, the corporation commenced to use the second and third floors of the warehouse for the storage of hops. No lease of these floors had been drafted, but there was an "understanding" or an "oral agreement" that when the remodelling was completed a formal lease would be executed and that until this work was finished the corporation "was to stay on" in the warehouse.

In addition to the matters above recited — all of which a jury upon the evidence would be warranted in finding as facts — the parties agreed that the defendant was in control of the elevator at the time of the accident; that the gates were on the elevator and were in good repair and working order when the corporation moved into the warehouse; that at the time of the accident the gates were off the elevator, in violation of law; that they had been off at some prior time; and that, when properly operating, the gates would automatically be in position and protect the opening when the elevator was not at that particular floor. The judge, subject to an exception, denied a motion to direct a verdict for the defendant. The parties having stipulated that, if there was error in the denial of the motion, judgment was to be entered for the defendant, otherwise judgment was to be entered for the plaintiff in the sum of $5,000, the judge reported the case upon his ruling denying the defendant's motion for a directed verdict.

The plaintiff in order to prevail must show that his

injuries were caused by the breach of some duty that the defendant owed him. He was not upon the premises for the purpose of transacting any business with the defendant or in response to an invitation, either express or implied, from the defendant. He was, however, at the warehouse as 'a business visitor of the corporation, and was engaged in effecting a sale of its goods to the Federal government. If the corporation was occupying the second and third floors as a tenant of the defendant, then, in the absence of anything tending to show the contrary, the defendant was bound to exercise reasonable care to keep and maintain in the same condition in which they were or appeared to be in March, 1937, at the time of the letting, those portions of its premises, including the elevator and its approaches, that remained in the control of the defendant and were used in common by its tenants.[1] *Draper* v. *Cotting*, 231 Mass. 51. *Goodman* v. *Provincetown*, 283 Mass. 457. *Peirce* v. *Hunnewell*, 285 Mass. 287. *Bronstein* v. *Boston & Maine Railroad*, 285 Mass. 491. *Cushing* v. *Jolles*, 292 Mass. 72. And the duty which the defendant owed to the corporation measures the obligation which it owed to the plaintiff. His rights against the defendant could not rise any higher. *Baum* v. *Ahlborn*, 210 Mass. 336. *Follins* v. *Dill*, 229 Mass. 321. *Boudreau* v. *Johnson*, 241 Mass. 12. *Telless* v. *Gardiner*, 266 Mass. 90. *Garland* v. *Stetson*, 292 Mass. 95.

The jury could find that, as a result of an agreement between the corporation and the defendant, the corporation transferred its office and moved its property into the warehouse and has since continued its use and occupancy of these premises; and that, in view of the entire agreement of which the use and occupancy by the corporation formed a part, the corporation had furnished consideration for such use and occupancy even if all matters arising from the agreement were to be finally adjusted and settled when the remodelling undertaken by the corporation was completed. The relation of landlord and tenant arises out of an agreement, express or implied, by which one enters

---

[1] There were three tenants of the defendant besides The Lyon Brothers Corporation. — REPORTER.

upon and continues in the occupancy of the premises of another for a consideration. *Lindsey* v. *Leighton*, 150 Mass. 285. *Crowe* v. *Bixby*, 237 Mass. 249. *Connery* v. *Cass*, 277 Mass. 545. *Ames* v. *Beal*, 284 Mass. 56. *Williams* v. *Seder*, 306 Mass. 134. But although the consideration for the use of premises is usually in the form of rental payable in money, yet any consideration sufficient to support a contract is all that is required to constitute an agreement from which a tenancy may result. *Fiske* v. *Framingham Manuf. Co.* 14 Pick. 491, 494. *Lyon* v. *Cunningham*, 136 Mass. 532, 540. *Stumpf* v. *Leland*, 242 Mass. 168, 172. The case is distinguishable from *Sordillo* v. *Fradkin*, 282 Mass. 255, and *Herman* v. *Golden*, 298 Mass. 9, where there was no evidence that the prospective tenant had paid any consideration for the use which he was making of the premises prior to the beginning of the term.

The defendant agreed that it was in control of the elevator and that the gates were in good repair and in working order when the corporation moved into the warehouse. The defendant was bound to exercise reasonable care to maintain the gates in this condition during the tenancy of the corporation. *Bronstein* v. *Boston & Maine Railroad*, 285 Mass. 491. The inspector of elevators on January 14, 1938, found that all the gates had been removed from the elevator landings. The defendant admitted that the elevator was not equipped with gates at the time of the accident, as required by law. Lyon, who was a director and clerk of the defendant, on the date of the accident left the loading platform whenever the movement of the hops to the platform stopped, and the jury could find that he knew or ought to have known that the gates were off the landing on the first floor. The accident happened in about an hour after Lyon had left, and it is a reasonable inference that the gates were not removed after he left. We need not decide whether the absence of the gates constituted a violation of law irrespective of the knowledge of their absence by the defendant. *Commonwealth* v. *New York Central & Hudson River Railroad*, 202 Mass. 394. *Newton* v. *McSweeney*, 225 Mass. 402. The failure of the defendant to maintain these gates in the condition

in which they appeared to be at the time the corporation became a tenant was sufficient evidence of negligence to present an issue of fact. *Silver* v. *Cushner,* 300 Mass. 583. *Chambers* v. *Durling,* 306 Mass. 327.

The jury could infer that the plaintiff, in following the tracks which led from the shipping door to the elevator, stepped into the unguarded elevator well, *Navien* v. *Cohen,* 268 Mass. 427; *Gavin* v. *Kluge,* 275 Mass. 372, 377; *Rocha* v. *Alber,* 302 Mass. 155; *Dunbar* v. *Ferrera Bros. Inc.* 306 Mass. 90, 92, and could find that the accident would have been prevented if the elevator gate had been in place. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Cushing* v. *Jolles,* 292 Mass. 72.

It has been frequently stated that one who has incurred an injury while groping his way in a dark place with which he is unfamiliar is not in the exercise of due care. *Benton* v. *Watson,* 231 Mass. 582. *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328. *Osgood* v. *Therriault,* 290 Mass. 513. *Herman* v. *Golden,* 298 Mass. 9. But the locus was not in utter darkness. The accident happened at about half past three, standard time, on a pleasant afternoon late in May. The plaintiff could see as he walked inside the warehouse. It is difficult accurately to describe in a printed record the degrees of light. The plaintiff while a witness at the trial pointed out to the jury that there was as much light in the warehouse at the time of the accident as there would be in the court room (where the shades were partially drawn) if the electric lights were off at the time he was testifying — on a clear, pleasant morning in June. He assumed that there was an elevator in the warehouse but he could rely to a reasonable extent upon the expectation that it would be equipped with a gate. *Gordon* v. *Cummings,* 152 Mass. 513, 518. *Hamilton* v. *Taylor,* 195 Mass. 68, 70. The light might have been ample to enable him to discover easily a gate if there were one. Lyon did not inform him of any danger when he requested him to "finish the work of getting those hops out." It cannot be said as matter of law that the plaintiff was contributorily negligent in proceeding as he did in the ware-

house.  *Ballou* v. *Collamore,* 160 Mass. 246.  *Wright* v. *Perry,* 188 Mass. 268.  *Wills* v. *Taylor,* 193 Mass. 113. *Hamilton* v. *Taylor,* 195 Mass. 68.  *Marston* v. *Reynolds,* 211 Mass. 590.  *Goldstein* v. *Slutsky,* 254 Mass. 501.  *Statkunas* v. *L. Promboim & Son Inc.* 274 Mass. 515.  *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176.

In accordance with the stipulation of the parties judgment must be entered for the plaintiff in the sum of $5,000.

*So ordered.*