NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-172

TYRONE WALKER

vs.

JULIANE PIERRE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830 (2019), the Supreme Judicial Court stated that "[a] tenant is entitled to actual receipt of the notice to quit within the time prescribed and before an eviction action is brought" (quotation omitted).  Id. at 850.  Here, invoking this principle, the tenant, Juliane Pierre, appeals from a Housing Court summary process judgment obtained by the landlord and property owner, Tyrone Walker.  Because at trial the tenant contested receipt of the notice to quit, yet the judge made no finding regarding whether she actually received it, the tenant argues that the judge erred in nevertheless concluding that the landlord had proved his case and was entitled to judgment for possession.  We vacate the judgment and remand the case for further proceedings.

Background.  We recite the procedural background along with those facts found by the judge that are essential to understanding the issues on appeal.[1]  The tenant resides at an apartment in a multiunit dwelling owned by the landlord in the Mattapan section of Boston.  The landlord and the tenant had previously been in an "ongoing relationship" and have two teenaged children together, but it appears that their relationship had ended sometime before trial.  There was undisputed evidence that the landlord had previously lived with the tenant but that he had moved out and that the tenant had obtained a restraining order and an order for child support against him.  The parties had no agreement with respect to rent, nor did the tenant owe any rent.  The landlord paid the mortgage, and the tenant paid for electricity, gas, cable, internet, and -- until March 2019 -- water.

The landlord entered this summary process action on March 9, 2020, by filing a summons and complaint.  Accompanying the

---

[1] Most of the judge's written findings are phrased as statements of how a particular witness had testified, followed by a statement that the judge found that witness's testimony on particular topics credible.  Compare Commonwealth v. Garner, 490 Mass. 90, 94 (2022) ("A statement generally crediting witness testimony is not the same as making factual deductions based on the evidence presented").  For convenience, we refer to these simply as findings, except where the distinction between credited evidence and findings is significant to the issues on appeal.

summons and complaint was a copy of a notice to quit, addressed to the tenant and dated January 8, 2020, purporting to terminate her tenancy on February 29, 2020.  The notice bore a constable's return of service, also dated January 8, 2020.  The return stated that the constable had made service by leaving the original notice at the apartment address in Mattapan and by sending a copy of the notice by first class mail, postage prepaid, to the same address.  The tenant did not file an answer.

At trial, on December 4, 2020, both parties were self-represented.  The judge began by noting that the trial had commenced a few days earlier but had been continued to allow the landlord to introduce the testimony of the constable.  The constable then testified that on the day in question, he had gone to the premises and knocked on the door.  There being no answer, he had left the notice to quit under the door and then mailed a copy to the tenant at the same address by first class mail, postage prepaid, but not by certified mail.

During the tenant's questioning of the constable, the tenant stated that she had not received the notice to quit, whereupon the judge stated, "I'm striking that testimony.  I'm happy to hear your testimony when it is your turn to testify."  The tenant did not return to the issue during her own testimony.  The judge's findings nevertheless state that the tenant

3

"testified that she did not receive a [n]otice [t]o [q]uit."
The findings further state that the judge credited the
constable's testimony with respect to the notice to quit and
credited the parties' testimony with respect to the remaining
issues.[2]  The judge then "f[ound] that, on January 8, 2020, the
[landlord] served the [tenant] with a legally sufficient 30
[d]ay [n]otice [t]o [t]erminate [t]enancy, and . . . that the
[landlord] has established his prima facie case for possession
of the premises, plus costs."

The judge, however, having identified an additional issue,
did not immediately decide the merits of the case.
Specifically, the tenant had testified that, while the landlord
was in jail in 2009, "we purchased the house."  "[I]t was always
ours; for us and the kids. . . .  I trusted him. . . .  I took
care of everything.  I worked.  Whatever needs to be done for
the house was done without any issues.  Our issues started after
the house was completed," including being renovated and
deleaded.  The tenant's testimony also suggested that her mother
had played some role in the purchase of the premises, but the
mother "ended up signing off the house to [the landlord]" and
was "force[d] . . . to move out."  The tenant asked the judge to

---

[2] These credibility findings did not resolve the matter of actual
receipt, because the constable did not and could not testify to
actual receipt, and because the judge did not state that she did
not credit the tenant's statement of nonreceipt.

4

order the landlord to refinance the premises and to pay half of its value to her.

Based on this testimony, the judge "f[ound] that the [tenant] has raised an issue at trial with respect to the division of the value of the premises, and finds that this issue is one that must be resolved by the Probate and Family Court Department."  The judge therefore stayed the action, pending a further hearing to be held sixty days later, "to allow the [tenant] to file the appropriate action" in the Probate and Family Court.  The judge stated that if the tenant "does not file said action timely," the judge would "make a decision on the merits of this case following the expiration of the stay."

The further hearing was continued several times and was ultimately held about ninety days later.  At that hearing, the tenant testified that she had spoken to various persons at the Probate and Family Court, who had given her various forms to fill out, as well the telephone number of a legal services office and other information, but who ultimately were unsure of how to help her.  She further testified that a Housing Court supervisor had told her that if she was not getting enough child support, she could file a form in Probate and Family Court, but the supervisor (understandably) could not advise her what to do. The tenant had told the supervisor that what she "mostly care[d] to file is the action for equity -- you told me equity property

5

form.  And that's not it.  They said they'd never heard [of] that form before . . . from any judge at all."  The tenant further testified that she could not afford a lawyer.

The judge then stated that although she had postponed a final decision "several times in order to give [the tenant] an opportunity to raise the issues that [she] had raised at trial . . . [n]othing more has happened.  All I can do at this point is to take the summary process case that is before me back under advisement."  The judge then reissued the original findings and conclusions (discussed supra) along with a finding that the tenant "has failed to take any action to litigate her claims with respect to the division of the value of the premises in the Probate and Family Court Department.  Accordingly . . . the [landlord] has established his case for possession of the premises, plus costs."  The judge ordered judgment for the landlord.  The tenant's motion for reconsideration was denied, and this appeal followed.

Discussion.  On appeal, the tenant makes two main arguments, the first related to whether she received the notice to quit, and the second concerning what she characterizes as her equitable defense to awarding possession to the landlord.  We address these in order.

1.  Notice to quit.  As stated at the outset, "[a] tenant is entitled to actual receipt of the notice to quit within the

6

time prescribed and before an eviction action is brought" (quotation omitted).  Adjartey, 481 Mass. at 850.  "It is the landlord's burden to 'show that [it] gave a notice which complied with the statute.  The statute does not proscribe how notice is to be given.' . . .  It is nonetheless evident that a notice taped to a door is not 'given to the tenant,' until the tenant receives actual or constructive notice of it."  Youghal, LLC v. Entwistle, 484 Mass. 1019, 1022 (2020), quoting Ryan v. Sylvester, 358 Mass. 18, 19 (1970).[3]  "[A] legally adequate notice to quit is not jurisdictional but rather [is] a condition precedent to a summary process action that is part of the landlord's prima facie case."  Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 127 (2018).  Where a tenant does not actually or constructively receive (or timely receive) the notice to quit, "the summary process complaint must be dismissed."  Youghal, supra at 1022.

---

[3] The statute at issue in Youghal was G. L. c. 186, § 11 (providing that fourteen-day notice to quit be "given in writing [by the landlord] to the tenant" to "determine" the lease). Youghal, 484 Mass. at 1022.  The statute at issue in Ryan was G. L. c. 186, § 12 ("Estates at will may be determined by either party by three months' notice in writing for that purpose given to the other party; and, if the rent reserved is payable at periods of less than three months, the time of such notice shall be sufficient if it is equal to the interval between the days of payment or thirty days, whichever is longer").  See Ryan, 358 Mass. at 19.  See also G. L. c. 186, § 12.

7

Here, there was no evidence or finding that the tenant had received constructive notice of the notice to quit, as that term has been construed in landlord-tenant cases,[4] and so we focus on the question of actual receipt. The constable's return stated that he had left the notice to quit at the premises and had mailed a copy of it to the tenant at the premises, first class, postage prepaid. But that return was merely "prima facie evidence of the facts stated in it." Ryan, 358 Mass. at 20, citing Coghlan v. White, 236 Mass. 165, 169 (1920). It said nothing about whether the tenant had actually received the notice.[5] The constable's trial testimony added only that he had not sent the copy of the notice by certified mail.

The tenant, for her part, stated that she had not received the notice. Although the judge struck this testimony, the judge

_____

[4] Ryan reviewed prior decisions concluding that constructive notice included leaving notice on the premises with "some coresident with the tenant," including the tenant's spouse, a partner in charge, or a tenant in common. Ryan, 358 Mass. at 20. Ryan also reviewed decisions in which claims of constructive notice were rejected. See id. at 20-21. Nothing in our decision should be understood as identifying the outer bounds of what constitutes constructive notice.

[5] This manner of providing the notice to quit would, if used to serve a summary process summons and complaint, comply with Rule 2 (b) of the Uniform Summary Process Rules (1993). But that rule on its face does not govern provision of the notice to quit, nor do the relevant statutes give much guidance. See note 3 supra. Under a separate statute, any lease or agreement by which a residential tenant purports to waive provision of a statutorily required notice to quit is "deemed to be against public policy and void." G. L. c. 186, § 15A.

later found the tenant to have "testified that she did not receive" the notice.  Accordingly, although the judge made a "find[ing] that . . . the [landlord] served the [tenant] with a legally sufficient" notice to quit, and a further finding that the landlord had "established his case for possession," we do not understand the judge to have made a finding on actual receipt of the notice to quit.

To be sure, the judge could have made such a finding on this record.  "Proper mailing of a letter is prima facie evidence of receipt by the addressee."  Commonwealth v. Koney, 421 Mass. 295, 303-304 (1995), citing Commonwealth v. Crosscup, 369 Mass. 228, 239 (1975).  If this evidence were unrebutted, a finding of receipt would be permissible, although not required. See Crosscup, supra at 240. But as "soon as evidence is introduced that warrants a finding that the letter failed to reach its destination, the artificial compelling force of the prima facie evidence disappears, and the evidence of non-delivery has to be weighed against the likelihood that the mail service was efficient in the particular instance, with no artificial weight on either side of the balance."  Hobart-Farrell Plumbing & Heating Co. v. Klayman, 302 Mass. 508, 510 (1939).  This is "a pure question of fact."  Id.

In sum, because the evidentiary status of the tenant's statement of nonreceipt is unclear, and because there was no

express finding regarding actual receipt, the case must be remanded for further findings.

The tenant contends that even if she were found to have received the notice to quit, it was insufficient. Her argument is that because she was a tenant at will, yet with no obligation to pay rent (let alone to do so "at periods of less than three months"), she was entitled by G. L. c. 186, § 12, to a three-month notice to quit, which the notice at issue here did not purport to be. We decline to address this argument, because, as we are about to discuss, the exact nature of her tenancy has not been resolved. On remand, the judge may, if necessary, make further findings on this issue.[6]

We decline the landlord's suggestion that we affirm the judgment on the alternative ground that the tenant was a mere tenant at sufferance and therefore was not entitled to any notice to quit. See Gabbidon v. King, 414 Mass. 685, 686 (1993) (appellate court may affirm on "any ground apparent on the record"). "At common law a tenant at sufferance is entitled to

_____

[6] The tenant gains nothing, however, from her additional argument that the landlord, having relied on a notice to quit purporting to terminate her tenancy, cannot now assert that there was no tenancy. See Adjartey, 481 Mass. at 852, citing Strycharski v. Spillane, 320 Mass. 382, 384-385 (1946) ("The basis for the landlord's eviction action is limited to the reasons for eviction provided in the notice to quit"). We do not understand the landlord to assert that there was no tenancy, nor did the notice to quit specify any particular type of tenancy.

10

no notice of the termination of that status before the landlord moves against him to obtain possession."[7]  Rubin v. Prescott, 362 Mass. 281, 284 (1972).  More recently, however, we have recognized that "[a] tenant at sufferance . . . is entitled to some form of notice of the intent to secure possession of the premises prior to the commencement of a summary process action to allow [the tenant] enough time to vacate" (quotation omitted).  Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 514 (2019).  Moreover, the question whether a tenancy is at sufferance or at will is commonly one of fact.  See Staples v. Collins, 321 Mass. 449, 451 (1947); Moskow v. Robinson, 276 Mass. 16, 18-19 (1931).  The judge was not asked to and did not make findings on this issue, nor may we resolve the question ourselves in the first instance.[8]  Thus, because it is not

_____

[7] If the tenancy at sufferance resulted from the termination by operation of law of a prior tenancy at will, then, under G. L. c. 186, § 13, the landlord may not bring an action to recover possession without first giving notice of the termination of the tenancy at will, the notice period being determined in accordance with the statute.  See Rubin v. Prescott, 362 Mass. 281, 284 (1972).

[8] In particular, "[t]he relation of landlord and tenant arises out of an agreement, express or implied, by which one enters upon and continues in the occupancy of the premises of another for a consideration."  Story v. Lyon Realty Corp., 308 Mass. 66, 69-70 (1941).  Such consideration is "usually in the form of rental payable in money, yet any consideration sufficient to support a contract is all that is required."  Id. at 70.  See Belizaire v. Furr, 88 Mass. App. Ct. 299, 303 (2015) (similar, regarding tenancy at will).  And "a tenancy at sufferance is readily changed into a tenancy at will by express or implied

"apparent on the record" that the tenant was a tenant at sufferance, we decline to affirm on the basis that she was not entitled to any notice to quit.[9]  Gabbidon, 414 Mass. at 686.

2.  Tenant's claimed equitable defense.  The tenant argues that the judge -- once she recognized that the tenant had "raised an issue at trial with respect to the division of the value of the premises" -- should not have directed the tenant to raise that issue in the Probate and Family Court but instead should have resolved it within the summary process action.  The tenant invokes the principle that "[w]here the affirmative defenses or counterclaims challenge the right to possession, the

---

agreement of the parties."  Staples, 321 Mass. at 451.  See Moskow, 276 Mass. at 18.  There was evidence here from which the judge could have found at least an implied agreement for the tenant to occupy the premises, supported by consideration such as the tenant's payment of bills for water, electricity, and gas, which are ordinarily a landlord's responsibility absent written agreement otherwise.  See G. L. c. 186, § 22; 105 Code Mass. Regs. § 410.354 (2007).

[9] The landlord also suggests that because the parties never reached any agreement as to consideration, the tenancy was merely a "gratuitous tenancy."  Even if this argument did not present unresolved questions of fact, see note 8, supra, we note that in the case the landlord relies upon, West v. First Agric. Bank, 382 Mass. 534 (1981), the court concluded that "a fourteen-day notice under G. L. c. 186, § 12, to vacate for nonpayment of rent" was "adequate to terminate immediately a gratuitous tenancy."  Id. at 538, 542.  West thus does not stand for the proposition the landlord wishes it to, that no notice is necessary to terminate a gratuitous tenancy (however that term may be defined).

12

judge must resolve those claims as part of the summary process action." Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 339 (2016), citing Bank of Am., N.A. v. Rosa, 466 Mass. 613, 624-625 (2013).

Here, it is quite unclear that the tenant raised any defense or counterclaim to challenge the landlord's right to possession. The nature of the defense or counterclaim the tenant sought to assert, and whether it is one within the jurisdiction of the Housing Court, was also, and remains, unclear.[10] Nevertheless, the judge, by staying her decision to allow the tenant to seek relief in Probate and Family Court, recognized that the tenant had raised an issue worthy of

_____

[10] The tenant did not file an answer, where any defenses and counterclaims should have been asserted. To be sure, in summary process cases "the right to assert affirmative defenses is not waived when an answer is not filed." Morse v. Ortiz-Vazquez, 99 Mass. App. Ct. 474, 481 (2021). But here, even at trial, although the tenant testified that she "took care of everything," she did not, for example, expressly claim to own any part of the premises, to have contributed to the purchase price, to have made mortgage payments, or to have paid for improvements. Nor did she assert that the landlord is anything other than the sole legal owner of the apartment and the building in which it is situated. On appeal, the tenant argues that she asserted a claim for a constructive trust. See Cavadi v. DeYeso, 458 Mass. 615, 627 (2011); Sullivan v. Rooney, 404 Mass. 160, 163 (1989). But her unfocused testimony at trial gave little hint of such a claim. The judge's reference to a possible "division of the value of the premises" may have been a reference to a claim for partition, which, under G. L. c. 241, § 2, would be within the concurrent jurisdiction of the Probate and Family Court and the Land Court. We imply no view on whether it might also be within the jurisdiction of the Housing Court under G. L. c. 185C, § 3.

13

consideration.  Moreover, a remand on the notice to quit issue is necessary in any event.

Although we recognize the difficulty the judge faced here, we think the appropriate resolution is to order further consideration on remand of the tenant's request that the value of the property be divided.  The judge should address whether the tenant made out a claim or defense that affects the landlord's right to possession or otherwise warrants relief within the Housing Court's jurisdiction.  As the tenant already had the opportunity to present evidence in support of her request, it may be sufficient for the judge to make further findings or rulings, but the judge in her discretion may take further evidence on the issue.

Conclusion.  The judgment and the order on the motion for reconsideration are vacated and the case is remanded for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Sacks, Singh & Brennan, JJ.[11]),

*Joseph F. Stanton*

Clerk.

Entered:  March 10, 2023.

---

[11] The panelists are listed in order of seniority.

14